(February 16, 1995)

■ MOUNT VERNON FIRE INSURANCE COMPANY, Respondent, v 170 EAST 106TH STREET REALTY CORP., Defendant, and JULIO J. BORDES, Appellant. [622 NYS2d 758] —Judgment, Supreme Court, New York County (Howard Miller, J.), entered August

4, 1993, which, after a non-jury trial, declared that plaintiff is not obligated to defend or indemnify defendant 170 East 106th Street Realty Corp. with respect to defendant-appellant's pending action for personal injuries, unanimously reversed, on the law, and plaintiff declared so obligated, with costs.

At issue on this appeal in an action for a declaratory judgment is whether plaintiff insurer sustained its burden of proving that it is not obligated to defend or indemnify its insured, 170 East 106th Street Realty Corp., because of the failure of the corporation's president and only officer to cooperate in the defense of the action brought against the corporation by defendant-appellant as he was obligated to do under a cooperation clause contained in the insurance policy.

In *Thrasher v United States Liab. Ins. Co.* (19 NY2d 159, 168), the Court of Appeals held that, in order to prove lack of cooperation relieving it of its obligations under a cooperation clause, an insurer must demonstrate that it acted diligently in seeking to bring about the insured's cooperation, that its efforts were reasonably calculated to obtain the insured's cooperation and that the attitude of the insured, after his cooperation was sought, was one of " 'willful and avowed obstruction' " (quoting *Coleman v New Amsterdam Cas. Co.,* 247 NY 271, 276).

In this case, we agree with the trial court that the insurer's efforts to contact its insured's president were diligent and reasonably calculated to bring about his cooperation. However, we find that the proof that the attitude of the insured's president was one of willful and avowed obstruction was insufficient as a matter of law and that plaintiff may not therefore disclaim coverage under the clause in the policy requiring the insured's cooperation.

While cases subsequent to *Thrasher* have not actually required that the insured have openly "avowed" his or her intent to obstruct the insurer in order to find that the insured has breached a cooperation clause *(see, e.g., Matter of Empire Mut. Ins. Co. [Stroud],* 36 NY2d 719, 721-722; *State Farm Fire & Cas. Co. v Imeri,* 182 AD2d 683) a very heavy burden is imposed on the insurer to show, in the first instance, that the circumstances support the inference that the insured's failure to cooperate was deliberate *(see, Matter of Empire Mut. Ins. Co. [Stroud],* 36 NY2d, *supra,* at 722; *Pawtucket Mut. Ins. Co. v Soler,* 184 AD2d 498, 499; *Hanover Ins. Co. v DeMato,* 143 AD2d 807, 808). The rationale for imposing this heavy burden is to protect an innocent injured party, who may well have

relied upon the fact that the insured had adequate coverage, from being penalized for the imprudence of the insured, over whom he or she has no control (see, Thrasher v United States Liab. Ins. Co., 19 NY2d, supra, at 168).

In this case, the accident which is the subject of defendant-appellant's action against the corporation is alleged to have occurred while he was employed by a contractor engaged by the corporation to perform certain construction work. According to his complaint in that action, defendant-appellant was injured when he was struck by a rock which fell from above him. His action against the corporation, as owner of the property, is based on Labor Law §§ 240 and 241.

After a number of attempts by the insurer's investigator to contact the corporation's president, Bruce Hisson, subsequent to the accident and institution of defendant-appellant's action against the corporation, Hisson responded with a statement setting forth his reason for giving late notice of claim to the insurer and providing a factual statement relating his lack of personal knowledge of the circumstances surrounding the accident. Although the insurer consistently had a difficult time reaching Hisson on the telephone, in March, when plaintiff's law firm sent a verification to Hisson for his signature, it was returned signed and notarized. On May 9, 1988, an investigator employed by plaintiff had a conversation with Hisson and verbally requested that he hand over copies of the corporation's contract with defendant-appellant's employer and the certificates of insurance, as well as information concerning other subcontractors who were on the job site at the time of the alleged accident. After this conversation, Hisson failed to respond, and the insurer was thereafter unable to locate him at any of his prior addresses or at several new addresses and telephone numbers which its investigation turned up, including one in Venezuela. Ultimately, the corporation was precluded from offering any testimony on liability at trial in the underlying action because of its failure to produce a witness at deposition.

This record does not support a finding of willful obstruction. Clearly, the insured's initial attitude was one of basic, if rather haphazard, cooperation. Although he required a number of reminders, he provided what information was requested and verified the answer when asked to. Hisson, who had already informed his insurer of his limited knowledge of the factual circumstances surrounding defendant-appellant's claim, was never clearly told that further cooperation beyond that which he had already provided would be required on his

part under his policy. While a letter which informed Hisson of his obligation to cooperate with his insurer was mailed to Hisson, even were we to assume from the fact that it was not returned to the sender that it was received by him *(but see, Matter of Empire Mut. Ins. Co. [Stroud],* 36 NY2d, *supra,* at 721), as it was mailed prior to Hisson's signing the aforementioned statement, Hisson may well have believed that he had already fulfilled that obligation *(see, Pawtucket Mut. Ins. Co. v Soler,* 184 AD2d, *supra,* at 499; *cf., Campbell v Travelers Ins. Co.,* 35 AD2d 362, *affd* 33 NY2d 667). Moreover, there is no evidence that Hisson ever received any specific warning that his failure to cooperate could lead to a disclaimer of coverage *(cf., Evans v International Ins. Co.,* 168 AD2d 374).

Moreover, the other circumstances of this case do not clearly support an inference of willfulness. Since Hisson had little or no personal knowledge relevant to the defense, he could justifiably have believed that his further cooperation was not required and his testimony would be useless. As to his failure to hand over certain requested documents, even the insurer does not claim that this failure affected its ability to defend. Furthermore, there is no evidence, or even allegation, of any motivation on Hisson's part to refuse to cooperate. Under these circumstances, we find that the insurer failed, as a matter of law, to carry its burden to provide sufficient evidence from which it may be inferred that Hisson's failure to remain in touch with the insurer can be clearly ascribed to willfulness rather than simply to carelessness. Concur—Murphy, P. J., Rosenberger, Ellerin, Rubin and Nardelli, JJ.