■ In the Matter of the Arbitration between NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY, Appellant, and EDWIN SALOMON, Respondent. ONE BEACON INSURANCE COMPANY, Proposed Additional Respondent, et al., Proposed Additional Respondents. [782 NYS2d 730]—

Order, Supreme Court, Bronx County (Howard Silver, J.), entered on or about October 20, 2003, which denied the petition to permanently stay arbitration, unanimously reversed, on the law, with costs, the petition granted and arbitration stayed.

On March 4, 2002, respondent Edwin Salomon was injured in an accident between an automobile in which he was a passenger, and a vehicle owned by proposed additional respondent Ana Marin. The registration record indicated that the Marin vehicle was insured by General Assurance Company, of which proposed additional respondent One Beacon Insurance Company is the parent company.

Upon being informed that General Assurance had disclaimed coverage on the ground of Marin's noncooperation, Salomon sought benefits under the uninsured motorist provisions of the policy covering the vehicle he had been in, issued by petitioner New York Central Mutual Fire Insurance Company. New York Central petitioned to stay arbitration, challenging the assertion that the Marin vehicle was uninsured. In opposition to the petition, Marin's insurer, General Assurance Company (asserting that it was incorrectly named as One Beacon), claimed that it had effectively disclaimed coverage because Marin failed to cooperate with its investigation of the accident.

Following a framed issue hearing, the motion court denied the stay, holding that the evidence supported the inference that

Marin's failure to cooperate was willful. For the reasons that follow, we reverse.

When an insured *deliberately* fails to cooperate with its insurer in the investigation of a covered incident as required by the policy, the insurer may disclaim coverage. However, in an effort to prevent innocent injured parties from being penalized due to a complete absence of insurance coverage "for the imprudence of the insured, over whom he or she has no control," a "very heavy burden" is imposed upon the disclaiming insurer (*see Mount Vernon Fire Ins. Co. v 170 E. 106th St. Realty Corp.*, 212 AD2d 419, 420-421 [1995], *lv denied* 86 NY2d 707 [1995]). A three-pronged test is applied to the insurer; it must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that its efforts were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured was one of "willful and avowed obstruction" (*Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 168 [1967]).

The insured need not have openly "avowed" the intent to obstruct the insurer; however, the showing must support the inference that the insured's failure to cooperate was deliberate (*Mount Vernon Fire Ins., supra* at 420). Mere inaction by the insured is not enough (*see Matter of Empire Mut. Ins. Co. [Stroud]*, 36 NY2d 719, 721-722 [1975]).

The standard of proof necessary is illustrated by *Stroud*. In *Stroud*, the insurer's adjuster sent letters by regular and registered mail; the letters sent regular mail were not returned, but the registered mailings were returned as undelivered. An adjuster twice visited the addresses known to the insurer, and communicated with the insured's broker and the Department of Motor Vehicles. The Court found the proof insufficient to support the inference that the insured had *received* any postaccident communications (*id.* at 721), explaining that "the inference of non-co-operation must be practically compelling" (*id.* at 722).

While other insurance happens to be available in this instance to cover respondent, we conclude that the standard must be the same in any matter of an insurer disclaiming coverage due to a noncooperating insured. That standard has not been met here.

The disclaiming insurer in the present case does not demonstrate much more effort than the insurer used in *Stroud*. Upon receiving notice of the accident from an attorney for one of the passengers rather than from Marin herself, it contacted her broker. Marin's broker did not have a telephone number for her, so a "contact letter" was sent to 1460 College Avenue, the address

listed on the police report. Two "reservation of rights" letters were also mailed to the College Avenue address, by regular and certified mail, as well as to 105 East 177th Street, the address for Marin in the insurer's file. The letters sent by regular mail did not come back, but the letters sent by certified mail came back unclaimed.

The file was assigned to a special investigations unit. An investigation unit manager testified that an investigator who was no longer in their employ, Sal Paliotta, was assigned. Review of the file established that a check run with the Department of Motor Vehicles revealed that the Marin vehicle had been "salvaged," and that the College Avenue address was the one listed on Marin's driver's license. Certified letters sent to Marin at the College Avenue and 177th Street addresses were returned as "unable to serve." One mailing to the College Avenue address came back with a notation that there was a forwarding address of 5 Minerva Place in the Bronx. The file indicated that Paliotta had visited the Minerva Place address, and determined that although Marin had lived there, she did not do so at the time of Paliotta's visit.

Finally, the testimony established that Marin's deposition was noticed for June 5, 2002, June 17, 2002, and July 10, 2002, and that notices were sent to the College Avenue address by certified mail. The receipt for the mailing regarding the June 17 deposition was returned with what purported to be Marin's signature, dated July 2, 2002.

The foregoing evidence is insufficient to support an inference that Marin's failure to cooperate was deliberate and willful. Indeed, the inference of noncooperation is far from the "practically compelling" showing contemplated in *Matter of Empire Mut. Ins. Co. (Stroud)* (36 NY2d 719 [1975], *supra*).

The insurer's efforts to locate Marin were almost entirely limited to sending letters. The assigned investigator never visited the College Avenue address or the 177th Street address, and there is no indication that on his one visit, to the Minerva Place address, he even sought to clarify when Marin had moved, or to where. These failures are troubling, particularly since the return of one of the certified letters bearing what appeared to be Marin's signature makes it appear that a visit to the location might have been illuminating.

Further, as this Court held in *Mount Vernon Fire Ins.* (212 AD2d at 422), "the other circumstances . . . do not clearly support an inference of willfulness." Since Marin was not present at the time of the accident, she had "no personal knowledge relevant to the defense" and could have believed that her coopera-

tion was not required since her testimony would be useless (*id.*). Nor is there any indication that she had any motivation to refuse to cooperate.

Finally, Marin's apparent receipt of one notice of deposition fails to establish deliberate noncooperation, inasmuch as the letter was received after the scheduled date had already passed, and the letter had asserted that the scheduled deposition would not be adjourned.

Ultimately, before being permitted to disclaim due to noncooperation, the insurer had an obligation to do somewhat more than merely sending letters. It should have ascertained, by on-site visits, whether and when the insured lived in the various locations it had on file, and whether forwarding addresses were available, in order to determine whether the insured was deliberately avoiding responding to the insurer.

The failure to do so warrants a stay of the uninsured motorist arbitration here. Concur—Nardelli, J.P., Mazzarelli, Saxe, Ellerin and Lerner, JJ.