(September 15, 2005)

■ In the Matter of LIBERTY MUTUAL INSURANCE COMPANY, Appellant, v FLORENCE ROLAND-STAINE et al., Respondents, et al., Respondent. [802 NYS2d 6]—

Order, Supreme Court, New York County (Leslie L. Lowenstein, Special Ref.), entered February 27, 2004, which denied petitioner's application to stay an uninsured motorist arbitration, unanimously reversed, on the law, without costs, and the petition to stay arbitration granted.

Respondent Florence Roland-Staine was a passenger in an automobile that was operated by Sandra Bennett and rear-ended by a car owned by respondent Wilfrido Taveraz. The police report indicates that Taveraz lives at 104 West 174th Street, and that his automobile was insured under a policy issued by General Assurance Company (General). At the time of the accident, Nelson Ocana was driving Taveraz's car. Staine filed a third-party claim under the uninsured motorist endorsement of Bennett's policy with Liberty Mutual Insurance Company (Liberty).

Staine then filed a demand for arbitration of her claim against Liberty. Liberty moved to permanently stay the arbitration, or, alternatively, for a temporary stay pending a determination as to whether the Taveraz vehicle was uninsured. Staine opposed the motion, arguing that General had disclaimed coverage based upon Taveraz's lack of cooperation with it. The IAS court held the petition in abeyance pending a determination by a special

referee as to whether Taveraz was uninsured. A hearing was held on this issue. Alfred Travers, a special investigator employed by General, testified. Travers stated that on June 24, 2002 he went to 104 West 174th Street, apartment 5B, the address on file with General for Taveraz. No one was there, and he left a letter requesting that Taveraz contact General. He recounted that on July 18, 2002, he looked for Taveraz at 1600 Nelson Avenue, and again at 104 West 174th Street, but no one was at either location, and Travers left "contact letters" in both places. On cross-examination, Travers admitted that he did not attempt to contact Ocana although he knew that Ocana lived at 1478 Walton Avenue.

General also introduced four letters into evidence, all of which were sent by certified mail to Taveraz. The first and third letters were sent "return receipt requested," and both were returned to sender unclaimed. The first letter, which was returned as unclaimed, was dated May 30, 2002, and sent to the 174th Street address. It advised Taveraz that he had breached the terms of his policy with General by failing to report the accident, but it did not request that Taveraz contact General. The letter stated "[w]e will endeavor to complete an immediate investigation and advise you if we will provide coverage." The second letter, dated June 17, 2002, was also sent to the 174th Street address. It was written by a claims adjustor for General, who requested that Taveraz contact the insurer to provide a statement about the accident. The third letter, also returned as unclaimed, dated June 21, 2002, was sent to the Nelson Avenue address. It informed Taveraz that coverage could be denied because of his failure to fulfill his obligations under the policy. Again, this letter did not request that Taveraz contact the insurer. The fourth letter, dated July 19, 2002, was sent to both 174th Street and Nelson Avenue. It disclaimed coverage due to Taveraz's failure to report the loss, confirm the details of the accident, or contact the insurer.

At the close of evidence, the referee requested written submissions from the parties. He thereafter concluded that Taveraz had failed to cooperate with General, giving it the right to disclaim coverage. This was error.

When an insured deliberately fails to cooperate with its insurer in the investigation of a claim as required by the policy, the insurer may disclaim coverage. However, to prevent innocent injured parties from suffering the consequences of a lack of coverage based upon "the imprudence of the insured, over whom he or she has no control," courts strictly scrutinize the facts and will allow a disclaimer due to lack of cooperation only

where, inter alia, the insured's actions are deliberate (*Matter of New York Cent. Mut. Fire Ins. Co. [Salomon]*, 11 AD3d 315, 316 [2004]; *Mount Vernon Fire Ins. Co. v 170 E. 106th St. Realty Corp.*, 212 AD2d 419, 421 [1995], *lv denied* 86 NY2d 707 [1995], citing *Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 168 [1967]). To establish lack of cooperation, the insurer, here General, must prove (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that its efforts were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured was one of "willful and avowed obstruction" (*New York Cent.*, 11 AD3d at 316, quoting *Thrasher* at 168).

While the insurer is not required to show that the insured openly "avowed" its intent to obstruct the investigation of a claim, the facts must support an inference that the failure to cooperate was deliberate (*Mount Vernon Fire Ins., supra* at 420). Mere inaction by the insured, as in this case, is an insufficient basis for disclaimer (*Matter of Empire Mut. Ins. Co. [Stroud—Boston Old Colony Ins. Co.]*, 36 NY2d 719, 721-722 [1975]).

In *Stroud*, the insurer's adjuster sent letters to the insured by regular and registered mail. The letters sent regular mail were not returned, but the registered mailings were returned undelivered. The adjuster in *Stroud* twice visited the addresses known to the insurer, and communicated with the insured's broker and the Department of Motor Vehicles (DMV). The Court of Appeals found that these efforts were insufficient to establish lack of cooperation because there was no evidence that the insured had actually received any postaccident communications (*id.* at 721). As the Court explained, "the inference of non-cooperation must be practically compelling" (*id.* at 722).

The facts of this case fall squarely under the holding in *Stroud*. General obtained two addresses for Taveraz, from DMV records and another database, and its investigator went to these locations in attempts to find the insured. Taveraz was not at either place, and there is no evidence that the investigator spoke to anyone at either location to verify Taveraz's address. Further, there is no indication that Taveraz received any of the letters mailed to him or left at either of the two locations visited by the investigator. The insurer did not attempt to contact Ocana, the driver of Taveraz's car, to inquire as to Taveraz's whereabouts, and no one else was questioned to determine whether Taveraz actually lived at either of the addresses.

Thus, the evidence is insufficient to support an inference that Taveraz's failure to cooperate was deliberate and willful. Indeed, the inference of noncooperation is far from the "practically

compelling" showing contemplated in *Stroud*. Accordingly, we reverse the order appealed and grant the petitioner's application for a stay of arbitration. Concur—Buckley, P.J., Mazzarelli, Friedman, Marlow and Sullivan, JJ.