■ HUNTER ROBERTS CONSTRUCTION GROUP, LLC, et al., Appellants, v ARCH INSURANCE COMPANY et al., Respondents. [904 NYS2d 52]—

Order, Supreme Court, New York County (Marylin G. Diamond, J.), entered September 18, 2009, which denied plaintiffs' motion for summary judgment declaring that defendant Arch Insurance Company (Arch) is obligated to defend and indemnify plaintiffs in the underlying personal injury action, unanimously reversed, on the law, without costs, the motion granted, and it is declared that Arch is obligated to defend and indemnify plaintiffs in the underlying personal injury action.

Plaintiffs, Hunter Roberts Construction Group, LLC and Hunter Roberts Construction Group, LLC, doing business as Hunter Roberts Interiors (Hunter), as construction manager for the Bear Stearns Fit Out project at 237 Park Avenue in Manhattan, subcontracted with defendant Petrocelli Electric Company (Petrocelli) to perform electrical work. The subcontract required Petrocelli to defend and indemnify Hunter against all claims "which arise out of" or "are connected" with Petrocelli's work and to obtain comprehensive general liability coverage naming Hunter as an additional insured.

On or about March 12, 2007, a Petrocelli employee, Robert Chevola, was working on the 7th floor of the building when he was allegedly "caused to trip and fall upon a hole in the floor." An accident report states that "[e]mployee was walking back to field office to get a can of spray paint. Employee was looking towards left at work being done when his left foot went into hole in floor causing him to trip and fall on to floor."

At the time of the accident, Petrocelli had in effect a commercial general liability policy from Arch which included as an additional insured:

"any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization is an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of:

"i) 'your work' at the location designated."

On November 21, 2007, Chevola commenced the underlying suit against Hunter and others. By letter dated January 7, 2008, Hunter, quoting the indemnity clause of the subcontract, advised Petrocelli and Arch that it had "recently been notified" of Chevola's claim and asked them to "accept this tender as per the terms and conditions of the contract." Hunter added that "[i]f there is any information that we can provide to assist in the defense of this matter please don't hesitate to call." By letter dated January 8, 2008, Hunter's carrier, Zurich American Insurance Company (Zurich), sent a follow-up letter to Arch and Petrocelli also demanding a defense and indemnification on Hunter's behalf. Zurich asserted that Hunter was the construction manager on the project, whose primary role was to coordinate work schedules and insure the work was being performed according to specifications and plans; that Chevola, a Petrocelli employee, tripped and fell while working on the project; that Petrocelli was obligated to indemnify Hunter and provide primary and noncontributory coverage "for any and all claims . . . arising out of" the subcontract; and that New York courts have required coverage under such a clause where the underlying plaintiff is an employee of the named insured.

By letter dated January 25, 2008, Arch acknowledged receipt of the tender and issued a reservation of rights, stating it would investigate whether Hunter was covered and whether the notice was timely. By letter dated February 6, 2008, Arch requested the subcontract and again stated that it would undertake an investigation into the circumstances surrounding the occurrence and the timeliness of Hunter's notice.

By letter dated April 1, 2008, Zurich responded that it had already supplied the subcontract with its January 8, 2008 letter. Zurich quoted the subcontract's language requiring Petrocelli to name Hunter as an additional insured and asserted that "since . . . Chevola was an employee of Petrocelli who was allegedly injured in the course of the work for Hunter, the loss plainly arises out of Petrocelli's work." Zurich also stated that it was enclosing a copy of the contract hiring Hunter as construction manager.

By letter dated May 8, 2008, Arch, stating that it had "investigated this matter" and "developed enough information to formulate its final coverage position," disclaimed coverage. The alleged grounds for the disclaimer were that (1) the subcontract was not an "insured contract"; (2) Hunter breached the duty to cooperate by failing to provide statements "that would clarify certain details regarding the timeliness of [Hunter's] notice to Arch and the circumstances of the inci-

dent"; (3) Hunter failed to notify Arch "as soon as practicable" of the occurrence in that the accident occurred on March 13, 2007 and notice was given 10 months later; and (4) Chevola's injury did not "arise out of" Petrocelli's work.

By letter dated May 9, 2008, Zurich replied that it had complied with Arch's requests for proof that the subcontract required Petrocelli to name Hunter as additional insured and repeated that since Chevola "was an employee of Petrocelli, who was allegedly injured in the course of the work for Hunter, the loss plainly arises out of Petrocelli's work." This action followed.

Hunter moved for summary judgment, asserting, among other things, that Arch's disclaimer was untimely. In opposition, Arch submitted the affirmation of counsel who alleged that the investigation was delayed because plaintiff did not respond to Arch's request for the contracts until April 1, 2008 and because two of the four Petrocelli employees who were either present or employed in a supervisory position on the date of incident were no longer employed by Petrocelli and Arch's investigator had to find them to take statements. Arch also submitted the affidavit of the investigator who averred that after he was retained on January 21, 2008, he contacted Hunter twice in January 2008 and once in February 2008 by telephone to discuss the incident and ascertain when Hunter received notice. The investigator allegedly asked to speak with the project manager for the Bear Stearns' project and at some later date was told that he would need to know the individual's name in order to speak to him. The investigator then resumed his investigation with Petrocelli until such time as he was able to find out who the project manager was. Arch also submitted the investigator's invoices.

The motion court found that the investigator's affidavit, along with the "invoices detailing his investigatory work and the difficulty he experienced in locating and speaking to Petrocelli employees, raise[ ] a triable issue of fact as to whether the notice of disclaimer was sent 'as soon as is reasonably possible.' " We now reverse.

Insofar as Arch's denial of coverage was based upon lack of coverage as an additional insured pursuant to the additional insured endorsement, a timely disclaimer was unnecessary (*see Markevics v Liberty Mut. Ins. Co.*, 97 NY2d 646, 648 [2001]; *Perkins v Allstate Ins. Co.*, 51 AD3d 647, 649 [2008]). However, the denial is without merit.

"Generally, the absence of negligence, by itself, is insufficient to establish that an accident did not 'arise out of' an insured's operations" (*Worth Constr. Co., Inc. v Admiral Ins. Co.*, 10 NY3d

411, 416 [2008]). Rather, the focus of an "arising out of" clause is not on the precise cause of the accident but on the general nature of the operation in the course of which the injury was sustained (*see Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 AD3d 461 [2009], *affd* 15 NY3d 34 [2010]). As the Court of Appeals explained in *Regal*, "We have interpreted the phrase 'arising out of' in an additional insured clause to mean originating from, incident to, or having connection with. It requires only that there be some causal relationship between the injury and the risk for which coverage is provided" (15 NY3d at 38 [internal quotation marks and citation omitted]).

Where, as here, the loss involves an employee of the named insured, who is injured while performing the named insured's work under the subcontract, there is a sufficient connection to trigger the additional insured "arising out of" operations' endorsement and fault is immaterial to this determination (*Tishman Constr. Corp. of N.Y. v CNA Ins. Co.*, 236 AD2d 211 [1997]; *Tishman Interiors Corp. of N.Y. v Fireman's Fund Ins. Co.*, 236 AD2d 385 [1997]; *Consolidated Edison Co. of N.Y. v Hartford Ins. Co.*, 203 AD2d 83 [1994]).

*Worth Constr. Co., Inc. v Admiral Ins. Co.* (10 NY3d 411 [2008], *supra*), does not require otherwise. In *Regal Constr. Corp.*, the Court of Appeals distinguished *Worth*, stating: "Here, there was a connection between the accident and Regal's work, as the injury was sustained by Regal's own employee while he supervised and gave instructions to a subcontractor regarding work to be performed. That the underlying complaint alleges negligence on the part of URS and not Regal is of no, consequence, as URS's potential liability for LeClair's injury 'ar[ose] out of' Regal's operation and, thus, URS is entitled to a defense and indemnification according to the terms of the CGL policy" (15 NY3d at 39).

Accordingly, Hunter, which had a written subcontract with Petrocelli that obligated Petrocelli to obtain comprehensive general liability coverage on Hunter's behalf, was an additional insured under the Arch policy's blanket endorsement, which covered the underlying claim.

As to the remaining grounds for Arch's disclaimer, under Insurance Law § 3420 (d) (2), an insurer wishing to deny coverage for death or bodily injury must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage." When an insurer fails to do so, it is precluded from disclaiming coverage based upon late notice, even where the insured has in the first instance failed to provide the insurer

with timely notice of the accident (*see Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1029 [1979]; *Delphi Restoration Corp. v Sunshine Restoration Corp.*, 43 AD3d 851 [2007], *lv dismissed* 9 NY3d 1002 [2007]).

The insurer bears the burden to explain the reasonableness of any delay in disclaiming coverage (*see Moore v Ewing*, 9 AD3d 484, 488 [2004]). The reasonableness of any delay is computed from the time that the insurer becomes sufficiently aware of the facts which would support a disclaimer (*see Pawley Interior Contr., Inc. v Harleysville Ins. Cos.*, 11 AD3d 595 [2004]). Although the timeliness of such a disclaimer generally presents a question of fact (*see Continental Cas. Co. v Stradford*, 11 NY3d 443, 449 [2008]), where the basis for the disclaimer was, or should have been, readily apparent before the onset of the delay, any explanation by the insurer for its delay will be insufficient as a matter of law (*see First Fin. Ins. Co. v Jetco Contr. Corp.*, 1 NY3d 64, 69 [2003]; *West 16th St. Tenants Corp. v Public Serv. Mut. Ins. Co.*, 290 AD2d 278, 279 [2002], *lv denied* 98 NY2d 605 [2002]). Where the basis was not readily apparent, an unsatisfactory explanation will render the delay unreasonable as a matter of law (*see Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co.*, 27 AD3d 84, 88 [2005], citing *First Fin. Ins. Co.*, 1 NY3d at 69). If the delay allegedly results from a need to investigate the facts underlying the proposed disclaimer, the insurer must demonstrate the necessity of conducting a thorough and diligent investigation (*see Quincy Mut. Fire Ins. Co. v Uribe*, 45 AD3d 661 [2007]; *Schulman v Indian Harbor Ins. Co.*, 40 AD3d 957 [2007]).

In disclaiming coverage, Arch asserted that Hunter failed to notify Arch "as soon as practicable" of the occurrence in that the accident occurred on March 13, 2007 and notice was given 10 months later. Such a reason for disclaimer would have been apparent upon examination of Hunter's January 7, 2008 and/or Zurich's January 8, 2008 tenders. While Arch asserts that difficulties in its investigation of the claim caused the delay, it does not explain, given the facts made known to it by Hunter and Zurich's submissions, why anything beyond a cursory investigation was necessary to determine whether Hunter had timely notified it of the claim (*see Scott McLaughlin Truck & Equip. Sales, Inc. v Selective Ins. Co. of Am.*, 68 AD3d 1619 [2009]). Accordingly, the four-month delay in disclaiming on this ground was unreasonable as a matter of law (*see e.g. First Fin. Ins. Co.*, 1 NY3d at 66; *State Ins. Fund v American Hardware Mut. Ins. Co.*, 64 AD3d 581 [2009]; *Pav-Lak Indus., Inc. v Arch Ins. Co.*, 56 AD3d 287 [2008]; *Saitta v New York City Tr. Auth.*, 55 AD3d 422, 423 [2008]).

Arch's disclaimer on the ground Hunter failed to cooperate is also untimely. The basis for the claim is that when the investigator contacted Hunter by telephone twice in January 2008 and once in February 2008 and asked to speak with the project manager, he was told he would have to know the project manager's name. The disclaimer on this ground over two months later was not made as soon as reasonably practicable. In any event, the disclaimer was without merit.

An insurer seeking to disclaim for noncooperation has a heavy burden of proof and must demonstrate that "it acted diligently in seeking to bring about the insured's co-operation[,] . . . that the efforts employed by the insurer were reasonably calculated to obtain the insure[d]'s co-operation . . . and that the attitude of the insured, after his co-operation was sought, was one of 'willful and avowed obstruction' " (*Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 168 [1967], quoting *Coleman v New Amsterdam Cas. Co.*, 247 NY 271, 276 [1928]; *see also Matter of State Farm Indem. Co. v Moore*, 58 AD3d 429, 430 [2009]). "Strict scrutiny" of facts supporting the noncooperation defense is required to protect "innocent injured parties from suffering the consequences of a lack of coverage" (*Matter of Liberty Mut. Ins. Co. v Roland-Staine*, 21 AD3d 771, 772 [2005]).

While the parties dispute when the subcontract was provided, the record reflects that Zurich provided Arch with the documentation requested no later than April 1, 2008, more than a month before the disclaimer. While Arch claims that Hunter impeded its investigator's progress, the investigator only alleges that he called Hunter's main telephone number three times and was told he would have to supply the name of the project manager if he wanted to speak with him. The investigator does not identify whom he spoke to and the calls are not reflected in his invoices. Nor is there any indication that the investigator ever appeared at Hunter's offices in person or that Arch ever made a specific demand that Hunter produce the project manager or any other witness on a date certain or that Arch ever advised Hunter that its alleged lack of cooperation was hindering the investigation. Nor did Arch demonstrate that further reasonable attempts to elicit Hunter's cooperation would be futile (*see Thrasher*, 19 NY2d at 168).

Thus, Arch has not carried its "very heavy burden" of demonstrating that it acted diligently in seeking to bring about the insured's cooperation, that its efforts were reasonably calculated to obtain the insured's cooperation and that the attitude of the insured, after its cooperation was sought, was one of willful and avowed obstruction (*see State Farm Indem. Co. v Moore*, 58

AD3d at 430-431; *cf. Matter of New York Cent. Mut. Fire Ins. Co. [Salomon]*, 11 AD3d 315 [2004]; *New York State Ins. Fund v Merchants Ins. Co. of N.H.*, 5 AD3d 449 [2004]).

These deficiencies are not cured by the affirmation of Arch's counsel, which lacks probative value (*see S.J. Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338 [1974]), or by the investigator's invoices. The first invoice shows that during the period of January 23, 2008 through February 19, 2008, the investigator received the assignment and attachments and attempted to contact Ricky Bilig, who allegedly witnessed the accident. There is no detail as to what these attachments were. The second invoice shows that during the period of February 19, 2008 through March 6, 2008, the investigator attempted to interview Bilig and visited Petrocelli, which said it would set up interviews with its employees Farrell and Eager. The third invoice shows that during the period of April 10, 2008 to April 15, 2008, the investigator interviewed Eager. The fourth invoice shows that on April 21, 2008, the investigator spoke with Farrell. The invoices do not reflect a lack of cooperation by Hunter nor do they establish that Arch did not have sufficient information in its possession to determine that Hunter's notice was untimely upon or shortly after the receipt of Hunter's tender. Concur—Tom, J.P., Andrias, Friedman, Nardelli and Catterson, JJ.