■ ADMIRAL INSURANCE COMPANY, Appellant-Respondent, v AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Respondent-Appellant, and SCOTTSDALE INSURANCE COMPANY, Respondent. [947 NYS2d 442]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered on or about December 29, 2009, which, to the extent appealed from as limited by the briefs, granted the motion by defendant Scottsdale Insurance Company (Scottsdale) for summary judgment declaring that Scottsdale is not obligated to reimburse plaintiff Admiral Insurance Company (Admiral) for any portion of Admiral's contribution to the settlement of the underlying action, granted the cross motion of defendant American Empire Surplus Lines Insurance Company (AEI) to the extent of declaring that AEI is not obligated to reimburse Admiral for any portion of Admiral's contribution to the settlement of the underlying action, implicitly denied AEI's cross motion to the extent it sought summary judgment declaring it entitled to be reimbursed by Admiral for $433,333 of AEI's contribution to the settlement of the underlying action, and denied Admiral's cross motion for summary judgment declaring it entitled to be reimbursed by AEI for $566,667 of Admiral's contribution to the settlement of the underlying action and to be reimbursed by Scottsdale for $300,000 of Admiral's contribution to the settlement of the underlying action, unanimously modified, on the law, to deny Scottsdale's motion and AEI's cross motion in their entirety and to grant Admiral summary judg-

ment declaring that Admiral's insured, Cross Country Contracting, LLC (Cross Country), was entitled to coverage with respect to the underlying action as an additional insured under the primary policy issued by AEI to B&R Rebar Consultants, Inc. (B&R) and under the excess policy issued by Scottsdale to B&R, and further declaring that Admiral is entitled to reimbursement for its contribution to the settlement of the underlying action in the amount of $566,667, plus interest, from AEI, and in the amount of $150,000, plus interest, from Scottsdale, and otherwise affirmed, with costs to Admiral against AEI and Scottsdale, each of which shall pay half of the costs.

Nonparty Cross Country, the concrete superstructure contractor on a Manhattan construction project, subcontracted the steel reinforcing work to nonparty B&R. On October 19, 2005, a B&R employee named Li Xiong Yang was working on the project, following the B&R foreman's instructions to straighten rebar dowel rods extending from the concrete flooring to enable the attachment of pre-formed concrete to the rods to create a wall. While engaged in this work for B&R, Yang was struck by falling plywood, sustaining serious injuries. Yang and his wife subsequently commenced the underlying personal injury action against Cross Country and others in Supreme Court, Kings County. B&R was not brought into the underlying action as a third-party defendant or otherwise. The underlying action resulted in a jury verdict holding Cross Country solely liable for Yang's injuries. During the damages phase of the trial, the primary insurer of both B&R and Cross Country, defendant AEI, and the excess insurer of Cross Country, plaintiff Admiral, settled the case for $2.3 million. AEI contributed $1,433,333 to the settlement, and Admiral, while reserving all of its rights, contributed the remaining $866,667.

After the settlement, Admiral commenced this action against AEI and defendant Scottsdale, B&R's excess insurer, for declaratory relief and equitable contribution among coinsurers. Admiral argues that AEI should have contributed to the settlement the full $2 million of aggregate primary coverage under both the policy AEI issued to Cross Country and the policy AEI issued to B&R, under which Cross Country is an additional insured.[1] Admiral further argues that, because Cross Country was an additional insured under the excess policy Scottsdale issued to B&R, Scottsdale should bear all or half (depending on the effect of the relevant policies' "Other Insurance" clauses) of the $300,000 of the settlement remaining after exhaustion of

---

1. The primary coverage policies AEI issued to B&R and Cross Country both have limits of $1 million per occurrence.

AEI's primary coverage. Scottsdale moved for summary judgment declaring that it had no obligation to contribute to the settlement, Admiral cross-moved for summary judgment on its claims, and AEI cross-moved for summary judgment requiring Admiral to reimburse AEI for the $433,333 it contributed to the settlement in excess of the applicable coverage limit of the policy it issued to Cross Country. The motion court granted Scottsdale's motion, denied Admiral's cross motion, and granted AEI's cross motion to the extent of ruling that AEI did not owe Admiral any reimbursement, although the court did not grant AEI's request for reimbursement. We modify to deny Scottsdale's motion and AEI's cross motion in their entirety, and to grant Admiral's motion to the extent of holding it entitled to reimbursement of $566,667 from AEI and to reimbursement of $150,000 from Scottsdale.[2]

It is undisputed that Cross Country is an additional insured under the primary policy and excess policy issued to B&R by AEI and Scottsdale, respectively. In this regard, the primary policy AEI issued to B&R provides in pertinent part that it "include[s] as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your [i.e., B&R's] operations[.]"[3] The primary issue on this appeal is whether Cross Country's liability for the injuries at issue in the underlying action constitutes "liability arising out of [B&R's] operations" under the B&R policies. Although it is undisputed that the plaintiff in the underlying action was injured while performing his duties as an employee of B&R in the course of the work for which B&R was hired by Cross Country, AEI and Scottsdale argue that Cross Country's liability did not "aris[e] out of [B&R's] operations" because B&R (which was not a party to the underlying action) was not found to be responsible for those injuries in any way, and because there is no evidence that those injuries resulted from any fault on B&R's part.

In construing a similar provision for additional insured coverage, the Court of Appeals specifically rejected the argument made by AEI and Scottsdale. In *Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA* (15 NY3d 34 [2010]), a construction manager (URS) for a project was sued by an employee of the prime construction contractor (Regal), who was

<hr>

**2.** Admiral's appellate brief states that the principal amount it seeks to recover from AEI is "$567,667," which appears to be a typographical error.

**3.** B&R's Scottsdale policy provides that "[a]ny additional insured under policy of 'underlying insurance' [including the AEI policy] will automatically be an insured under this insurance."

injured while engaged in his duties at the project. URS sought coverage as an additional insured under Regal's policy, which afforded such coverage to URS "only with respect to liability arising out of [Regal's] ongoing operations" (*id.* at 38 [internal quotation marks omitted]). The Court of Appeals held that URS was entitled to coverage under this provision, explaining:

"We have interpreted the phrase 'arising out of' in an additional insured clause to mean 'originating from, incident to, or having connection with.' It requires only that there be some causal relationship between the injury and the risk for which coverage is provided.

"Here, Regal's employee, LeClair, was walking through the work site to indicate additional walls that needed to be demolished by Regal's subcontractor when he slipped on a recently-painted metal joist. Although Regal and [its insurer] contend that LeClair's injury did not arise from Regal's demolition and renovation operations performed for URS, but that it was URS employees who painted the joist on which LeClair slipped, the focus of the inquiry is not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained. Accordingly, the injury 'ar[ose] out of' Regal's operations notwithstanding URS's alleged negligence, and fell within the scope of the additional insured clause of the insurance policy" (*id.* at 38 [citations and some internal quotation marks omitted]).

In *Regal*, the Court of Appeals distinguished its earlier decision in *Worth Constr. Co., Inc. v Admiral Ins. Co.* (10 NY3d 411 [2008]) on the ground that the general contractor in *Worth* was denied additional insured coverage under a policy issued to one of its subcontractors (Pacific) because Pacific was neither the employer of the injured worker nor responsible for the accident, which occurred while Pacific was not even present at the job site (*see* 15 NY3d at 38-39).[4] The Court of Appeals elaborated in *Regal*: "Here, there was a connection between the accident and Regal's work, *as the injury was sustained by Regal's own employee* while he supervised and gave instructions to a subcontractor regarding work to be performed. *That the underlying complaint alleges negligence on the part of URS and not Regal is of no consequence,* as URS's potential liability for LeClair's

---

**4.** *Bovis Lend Lease LMB Inc. v Garito Contr., Inc.* (65 AD3d 872 [2009]), on which AEI and Scottsdale also rely, is similarly distinguishable, in that there, as in *Worth*, the injured worker was not an employee of the named insured (*see id.* at 877 [Andrias, J.P., dissenting] [the injured worker was "a union carpenter working for another subcontractor," i.e., not the named insured]).

injury 'ar[ose] out of' Regal's operation and, thus, URS is entitled to a defense and indemnification according to the terms of the CGL policy" (*id.* at 39 [emphasis added]).

Less than a month after *Regal* was issued, we followed it, holding: "Where . . . the loss involves an employee of the named insured, who is injured while performing the named insured's work under the subcontract, there is a sufficient connection to trigger the additional insured 'arising out of' operations' endorsement and fault is immaterial to this determination" (*Hunter Roberts Constr. Group, LLC v Arch Ins. Co.*, 75 AD3d 404, 408 [2010]). More recently, we held that a clause covering "liability caused by [the subcontractor's] ongoing operations performed for" the additional insured—language arguably narrower than the "arising out of" language at issue in *Regal*, *Hunter Roberts* and the instant case—also covered a "loss involv[ing] an employee of . . . the named insured, who was injured while performing the named insured's work under the subcontract" (*W & W Glass Sys., Inc. v Admiral Ins. Co.*, 91 AD3d 530, 530-531 [2012]).[5]

Cross Country's coverage as an additional insured under the policies issued to B&R having been established, it follows that AEI should have contributed to the $2.3 million settlement (to which AEI was a party) $2 million, the sum of the applicable limits under the primary policies AEI issued to B&R and Cross Country. Hence, Admiral, as an excess insurer, is entitled to equitable contribution from AEI in the amount of the difference between $2 million and $1,433,333 (the amount AEI actually contributed), which is $566,667. In addition, Admiral is entitled to recover half of the remaining $300,000 of its contribution to the settlement from Scottsdale pursuant to Cross Country's additional insured coverage under the excess policy Scottsdale issued to B&R. Contrary to Admiral's argument, the substantially identical "Other Insurance" clauses of the Admiral and Scottsdale policies cancel each other out, with the result that

---

**5.** Notably, Scottsdale's appellate brief does not even cite *Regal* or *Hunter Roberts*. AEI's attempt to distinguish *Regal* and *Hunter Roberts* on the ground that those cases involved the duty to defend (which is not at issue here) is without merit. In each of those decisions, the holding that the additional insured was covered in the underlying action was based on allegations that the plaintiff therein had been injured while doing his job as an employee of the named insured on work the named insured was performing as a contractor of the additional insured. The same is true here; indeed, the matter is not even in dispute. Given that the liability at issue thus arises from the named insured's (B&R's) operations on behalf of the additional insured (Cross Country), it is immaterial both that there was apparently no fault on the part of the former and that there was (as determined in the underlying action) fault on the part of the latter.

the two excess insurers must share ratably the cost of the settlement in excess of the available primary coverage.[6]

Scottsdale makes various arguments in support of its contention that, even if Cross Country were its additional insured for purposes of this loss, it should not be required to reimburse Admiral for any portion of the settlement. None of these arguments has merit. In particular, because Admiral is entitled to equitable contribution in its own right, without regard to being subrogated to any rights of its insured, the "voluntary payments" clause of the Scottsdale policy does not bar Admiral's recovery. Nor was Admiral's participation in the settlement voluntary so as to preclude it from seeking contribution. The loss plainly fell within the scope of Admiral's coverage of Cross Country, and Admiral was obligated to indemnify Cross Country for the portion of the settlement amount for which it now seeks reimbursement from Scottsdale, i.e., the amount in excess of AEI's primary coverage. In addition, the existing record, on which there are no material factual disputes, establishes as a matter of law that the settlement of the underlying action was reasonable. Concur—Andrias, J.P., Friedman, Sweeny, Renwick and Roman, JJ.

6. Each of the Admiral and Scottsdale policies has a limit of $10 million per occurrence.