[937 NYS2d 164]

GEORGE CAMPBELL PAINTING et al., Respondents-Appellants, v
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PA, Appellant-Respondent.

First Department, January 17, 2012

### APPEARANCES OF COUNSEL

*Sedgwick, Detert, Moran & Arnold LLP,* New York City (*Jeffrey M. Winn* and *Lawrence Klein* of counsel), for appellant-respondent.

*Traub Lieberman Straus & Shrewsberry LLP,* Hawthorne (*Lisa J. Black, Meryl R. Lieberman* and *Robert S. Nobel* of counsel), for respondents-appellants.

### OPINION OF THE COURT

FRIEDMAN, J.

Insurance Law § 3420 (d) (redesignated as § 3420 [d] [2] by L 2008, ch 388, § 5) requires a liability insurer to give the insured or the injured person written notice of disclaimer of a personal injury claim "as soon as is reasonably possible."[1] In *DiGuglielmo v Travelers Prop. Cas.* (6 AD3d 344 [2004], *lv denied* 3 NY3d 608 [2004]), we held that, notwithstanding this statutory language, "[a]n insurer is not required to disclaim on timeliness grounds before conducting a prompt, reasonable investigation into other possible grounds for disclaimer" (6 AD3d at 346) (hereinafter, the *DiGuglielmo* rule). Today, we decline to follow,

---

1. Section 3420 (d), as in effect when the subject policy was issued, provided in full:

> "If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice *as soon as is reasonably possible* of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant" (emphasis added).

The 2008 amendment, in addition to redesignating the provision as section 3420 (d) (2), revised the statutory language slightly (the words "delivered or issued for delivery" were changed to "issued or delivered"). The 2008 amendment applies only to policies issued on or after its effective date (*see* L 2008, ch 388, § 8), and does not appear to bear on the issues raised on this appeal.

and expressly overrule, the *DiGuglielmo* rule, because we find it to be inconsistent with the text of section 3420 (d) and with the decisions of the Court of Appeals interpreting that statute. In so doing, we are mindful of the important role precedent plays in common-law adjudication and of the reliance insurers may have placed on the *DiGuglielmo* rule in conducting their business (although the rule has never been adopted by the Second Department). Nonetheless, as more fully explained below, our determination of this appeal is dictated by fidelity to the plain language chosen by the Legislature, the teachings of our state's highest court, and the policy considerations embodied in the law.

Accordingly, we now hold, in agreement with the Second Department's decision in *City of New York v Northern Ins. Co. of N.Y.* (284 AD2d 291 [2001], *lv dismissed* 97 NY2d 638 [2001]), that section 3420 (d) precludes an insurer from delaying issuance of a disclaimer on a ground that the insurer knows to be valid—here, late notice of the claim—while investigating other possible grounds for disclaiming.[2] In this case, therefore, where the record establishes that the insurer had sufficient information to disclaim coverage on the ground of late notice no later than January 19, 2006, a disclaimer issued on that ground nearly four months later, on May 17, 2006, was ineffective as a matter of law. Once the insurer (defendant National Union Fire Insurance Company of Pittsburgh, Pa. [NUFIC]) possessed all the information it needed to determine that plaintiffs, which sought coverage as additional insureds, had failed to give NUFIC timely notice of the claim as required by the policy, NUFIC had no right to delay disclaiming on the late-notice ground while it continued to investigate whether plaintiffs were, in fact, additional insureds (as NUFIC ultimately determined they were).

This insurance dispute arises from an occurrence during renovation work on the Henry Hudson Bridge, a structure owned by plaintiff Triborough Bridge and Tunnel Authority (TBTA). Plaintiff George Campbell Painting (Campbell) was the general contractor for the project in question, and nonparty Safespan Platform Systems, Inc. (Safespan) was a subcontractor on the project. On August 11, 2003, nonparty James Conklin, a Safespan employee, was injured when he lost his footing and fell

---

**2.** In *Northern*, the Second Department held that an insurer was not entitled, under section 3420 (d), to delay issuing a late-notice disclaimer until it finished "investigat[ing] whether the City was an additional insured" because "such an investigation was unrelated to the reason for the disclaimer and [the defense of lack of additional insured status] could have been asserted at any time" (284 AD2d at 292).

down a makeshift hillside ramp that provided access to a shanty office at the work site.

Under its subcontract with Campbell, Safespan was required to obtain liability insurance covering both Campbell and TBTA as additional insureds. At the time of Conklin's accident, Safespan had primary liability coverage, with a per-occurrence limit of $1 million, under a policy issued by Gulf Insurance Company (Gulf). Safespan also had excess liability coverage under an umbrella policy issued by defendant NUFIC, with a per-occurrence limit of $10 million excess of the $1 million limit of the underlying Gulf policy. The "Additional Insured" endorsement to the Gulf policy provided that the policy would cover "any person or organization for whom you [Safespan] are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." The NUFIC umbrella policy provided that it would provide excess coverage to "[a]ny person or organization . . . included as an additional insured" in the underlying Gulf policy.

In December 2003, Conklin commenced a lawsuit against Campbell and TBTA in Supreme Court, Bronx County (the *Conklin* action), in which he sought recovery for his injuries under the common law and Labor Law §§ 200, 240 (1) and § 241 (6). In January 2004, Campbell and TBTA tendered their defense in the *Conklin* action to Gulf, Safespan's primary insurer, pursuant to the "Additional Insured" endorsement to the Gulf policy. Gulf accepted the tender and appointed a law firm to defend both Campbell and TBTA (collectively, Campbell/TBTA) in the *Conklin* action. NUFIC, Safespan's excess insurer, was not notified of the *Conklin* action when the defense was tendered to Gulf.

During the course of the *Conklin* action, Campbell/TBTA's counsel periodically sent status reports on the litigation to Gulf. In a status report dated August 23, 2004, counsel discussed potential damages in the case in light of the bill of particulars that Conklin had served. As pertinent to this appeal, the August 2004 status report stated:

> "The plaintiff is alleging that due [to] the incident he sustained three herniated discs at L3-L4 with nerve impingement at L4-L5 and L5-S1, a bulging disc at L1-L2 as well as an internal derangement of

the shoulder. The herniation at the L3-L4 space required a spinal fusion, indicating a severe injury.

"Although the plaintiff continued to work for almost a month following the incident, he claims he was confined to bed due to his injuries from September 2003 through February 2004. The plaintiff apparently is still primarily confined to home.

"Based on the plaintiff's claim that he was earning approximately $3,200 a week, his lost earnings total is currently $130,000. The future lost wage claim is $9,000,000, which seems quite inflated. It assumes that this relatively young 38 year old plaintiff will never return to any work."

Notwithstanding that, as of August 2004, Campbell/TBTA knew from Conklin's bill of particulars that he was alleging "a severe injury" and was asserting a multimillion-dollar lost wages claim—which, if successful, would far exceed Safespan's primary insurance—NUFIC, the excess insurer, was not given notice of the claim until November 2005, more than a year later. By letter to NUFIC dated November 16, 2005, Campbell/TBTA's counsel advised NUFIC of the pendency of the *Conklin* action and brought to NUFIC's attention that "[Conklin's] attorney has recently represented that [his] damages may substantially exceed the $1,000,000 limit of liability of the [Gulf] policy."[3] Noting that NUFIC was Safespan's excess carrier, the November 16 letter requested that "[NUFIC], as the excess insurer of [TBTA] and [Campbell] with regard to the captioned action, participate with [Gulf] in the handling and resolution of the *Conklin* Action." A copy of the *Conklin* complaint was enclosed with the letter.

According to NUFIC, it received the November 16 letter from Campbell/TBTA's counsel on November 23, 2005. A NUFIC claims adjuster responded by letter dated December 23, 2005. While the December 23 letter acknowledged the existence of "potential excess coverage for Safespan" in connection with the *Conklin* action, NUFIC purported to reserve all of its rights under the policy. In that regard, NUFIC raised, inter alia, the possibility that Campbell/TBTA's notice to NUFIC may have been untimely under the terms of Safespan's policy. As noted in the December 23 letter, one of the "Conditions" of the NUFIC

---

**3.** By November 2005, Gulf's name had changed due to a corporate acquisition. For purposes of this appeal, the name change may be ignored.

policy provided: "If a claim is made or suit is brought against the Insured that is *reasonably likely to involve this policy* you must notify us in writing as soon as practicable" (emphasis added). The December 23 letter stated:

> "[T]he policy conditions require timely notice. We note that your tender request is our first notice of this loss. It further appears [that] this matter has been in suit for approximately 2 years. However, first notice to NUFIC was not [received] until November 23, 2005. This notice may have breached the foregoing policy conditions."

The December 23 letter requested that Campbell/TBTA provide NUFIC with the Gulf policy, "all contracts between the defendants [in the *Conklin* action] and our insured," "all of counsel's evaluations of liability and/or damages," and "your explanation as to why notice to us was delayed."

By letter to Campbell/TBTA's counsel dated January 17, 2006, the NUFIC claims adjuster noted that NUFIC had not yet received any response to its December 23 letter. Counsel to Campbell/TBTA responded to NUFIC by letter dated January 19, 2006, enclosing (1) Safespan's certificate of insurance under the Gulf policy (the policy itself, the letter stated, would be "forwarded under a separate cover"), (2) the contract between TBTA and Campbell, (3) the subcontract between Campbell and Safespan, and (4) "[a] copy of our previous status reports to [Gulf] which reflect our evaluations of liability and damages."

Among the documents transmitted to NUFIC with the January 19, 2006 letter from Campbell/TBTA's counsel was the aforementioned August 2004 status report. However, rather than promptly disclaim on the ground of late notice, NUFIC sent counsel for Campbell/TBTA letters dated March 20 and April 5, 2006, repeating its requests for the Gulf policy. NUFIC finally received a copy of the policy on or about May 1, 2006.

Based on the Gulf policy, NUFIC's claims adjuster concluded that Campbell and TBTA were, in fact, additional insureds under the NUFIC umbrella policy, which "followed form" to the Gulf policy. Nonetheless, by letter dated May 17, 2006, NUFIC rejected the claim on the ground of late notice. NUFIC's May 17 letter stated in pertinent part:

> "In his bill of particulars, Conklin alleges a future lost wage claim of $9 million, which substantially exceeds the limits of the Gulf Policy. Conklin fur-

ther alleges severe and serious spinal injuries that required, among other things, spinal fusion surgery. This is information that was available to you no later than August 2004. However, we received *first* notice of the suit when we received the tender letter on November 23, 2005, almost *two years* after the complaint was filed on January 9, 2004. Moreover, the tender letter enclosed only the complaint, and we did not receive the August 2004 report on plaintiff's first bill of particulars until January 2006, more than sixteen months after you received the first bill of particulars indicating that coverage under the NUFIC Policy may be implicated.

"By letter dated December 23, 2005, we responded to your tender, noting potential coverage under the NUFIC Policy and reserving rights on the basis of, among other things, late notice. We requested a copy of the Gulf Policy and an explanation as to the delay in notifying us of the lawsuit. Following our third request for the Gulf Policy, we finally received a copy on or about May 1, 2006. To date, you have not provided us with any explanation for the delay in providing notice to NUFIC.

"An insured's duty to notify its excess insurer arises when the insured has reason to believe that an occurrence is likely to involve excess coverage. Based on our review of the information provided to us, we conclude that NUFIC did not receive timely notice of the lawsuit; therefore, there is no coverage under the NUFIC Policy."

About two years after NUFIC's May 2006 disclaimer, Conklin, Campbell/TBTA and three of Campbell/TBTA's insurers entered into a settlement agreement, dated July 21, 2008, resolving the *Conklin* action for total consideration of $5,500,000. The settlement was funded as follows: Gulf contributed its full $1 million policy limit; Campbell's primary insurer, American Home Insurance Company (American Home), contributed its full $1 million limit; and Campbell's excess insurer, Westchester Fire Insurance Company (Westchester), contributed $3.5 million. The settlement agreement provided that payment of $1 million of Westchester's share would not become due until July 1, 2009, and that Campbell/TBTA reserved the right to bring a declara-

tory judgment against NUFIC challenging the latter's refusal to provide coverage.[4]

Campbell/TBTA commenced this action against NUFIC in December 2008. The complaint seeks, inter alia, (1) a declaration that NUFIC's late-notice disclaimer was untimely under Insurance Law § 3420 (d) and (2) recovery from NUFIC of $999,950, NUFIC's alleged pro rata share of the $3,500,000 excess layer of the settlement of the *Conklin* action. After joinder of issue, Campbell/TBTA moved for summary judgment. NUFIC opposed Campbell/TBTA's motion and cross-moved for summary judgment in its own favor, arguing, inter alia, that Campbell/TBTA had given it late notice of the *Conklin* action and that its disclaimer on that ground had been timely under Insurance Law § 3420 (d). Supreme Court granted summary judgment to Campbell/TBTA, holding NUFIC liable "to pay $999,950.00 as its pro rata share of the excess layer settlement" in the *Conklin* action (2009 NY Slip Op 31044[U], *3 [2009]). NUFIC has appealed, and Campbell/TBTA has cross-appealed on one issue on which it deems itself aggrieved. We modify to deny Campbell/TBTA summary judgment as to the amount of the settlement NUFIC is obligated to pay, but otherwise affirm.

In determining whether NUFIC's disclaimer was timely under Insurance Law § 3420 (d), we begin with the statutory language, which, on its face, requires the insurer to disclaim "as soon as is reasonably possible." This plain language cannot be reconciled with allowing the insurer to delay disclaiming on a ground fully known to it until it has completed its investigation (however diligently conducted) into different, independent grounds for rejecting the claim. If the insurer knows of one ground for disclaiming liability, the issuance of a disclaimer on that ground without further delay is not placed beyond the scope of the "reasonably possible" by the insurer's ongoing investigation of the possibility that the insured may have breached other policy provisions, that the claim may fall within a policy exclusion, or (as here) that the person making the claim is not covered at all. Stated otherwise, the statute mandates that the disclaimer be issued, not "as soon as is reasonable," but "as soon as is reasonably *possible*" (emphasis added).

---

4. Although the settlement agreement gave Westchester the right to pay the final $1 million installment of the settlement before it became due on July 1, 2009, there is no indication in the record that the final payment was made before the order appealed from was entered on May 21, 2009. Whether the payment was made after entry of the order appealed from is, by definition, a matter outside the record.

Here, NUFIC's May 17, 2006 disclaimer letter itself demonstrates that NUFIC had all the information it needed to disclaim on late-notice grounds as of January 19, 2006. As set forth in the excerpt from the May 2006 disclaimer quoted earlier in this opinion, the information on which NUFIC relied in disclaiming—that, as of August 2004, Campbell/TBTA knew from Conklin's first bill of particulars that "coverage under the NUFIC [umbrella] Policy may be implicated" because there was a significant likelihood that the value of the claim would exceed the amount of primary coverage—was received by NUFIC on or about January 19, 2006, when it received a copy of the August 2004 status report describing the contents of Conklin's first bill of particulars. By NUFIC's own account, the contents of the August 2004 status report—which, to reiterate, NUFIC received in January 2006—were sufficient to put Campbell/TBTA on notice that the *Conklin* action was "reasonably likely to implicate the excess coverage" (*Century Indem. Co. v Brooklyn Union Gas Co.*, 58 AD3d 573, 574 [2009] [internal quotation marks omitted]). Nonetheless, NUFIC did not receive notice of the claim from Campbell/TBTA until November 2005, more than a year after the August 2004 status report. To be clear, not a single document or piece of information that NUFIC's May 17 letter referenced in setting forth its basis for disclaiming on late-notice grounds came into NUFIC's possession *after* January 2006.

Notably, the possible basis for denial of coverage that NUFIC was investigating while withholding its late-notice disclaimer until May 17—the possibility that Campbell and TBTA were not additional insureds under Safespan's NUFIC policy and therefore not covered at all—would not even have been subject to section 3420 (d) had it proven meritorious (*see Zappone v Home Ins. Co.*, 55 NY2d 131, 138 [1982] ["the Legislature in using the words 'denial of coverage' did not intend to require notice when there never was any insurance in effect"]). *Zappone* supports Campbell/TBTA's position in this appeal, since that case establishes that a timely disclaimer on the ground of late notice would not have prejudiced NUFIC's ability to reject the claim subsequently on the additional ground that Campbell and TBTA were not insured, had NUFIC ultimately discovered that the facts justified such a position.[5]

---

5. Of course, NUFIC ultimately confirmed that Campbell and TBTA were, in fact, covered by the subject policy as additional insureds. Had it been

NUFIC contends that the timeliness of its disclaimer is established by the *DiGuglielmo* rule discussed in the first paragraph of this opinion, i.e., the holding that "[a]n insurer is not required to disclaim on timeliness grounds before conducting a prompt, reasonable investigation into other possible grounds for disclaimer" (6 AD3d at 346). As previously stated, we decline to follow the *DiGuglielmo* rule because we find it to be inconsistent with the text of the governing statute—which, to reiterate, requires that a disclaimer be issued "as soon as is reasonably possible"—and with the Court of Appeals' jurisprudence on that statute.[6]

To follow the *DiGuglielmo* rule would be in effect to permit an insurer to delay deciding whether to disclaim on grounds known to it while pursuing an investigation of other potential grounds for disclaiming liability or denying coverage. More than 40 years ago, however, the Court of Appeals specifically rejected an insurer's argument that the statute (then codified as Insurance Law § 167 [8]) should be read to "requir[e] speed [in giving notice] once the decision to disclaim has been made . . . [but to] permit[ ] delay in making the decision" (*Allstate Ins. Co. v Gross*, 27 NY2d 263, 268 [1970]). Thus, "[t]he literal language of th[e] statutory provision requires prompt notice of disclaimer after decision to do so, and by logical and practical exclusion, there is imported the obligation to reach the decision to disclaim liability or deny coverage promptly too, that is, within a reasonable time" (Payne and Wilson, New York Insurance Law § 31:15, at 927 [31 West's NY Prac Series 2010-2011], citing *Gross*). The proposition that an insurer is entitled to hold a known ground for disclaiming in reserve while investigating

otherwise, there would be no occasion to discuss the timeliness of NUFIC's disclaimer based on late notice.

6. We observe that the *DiGuglielmo* rule was unnecessary to the result in that decision, which held the insurer's disclaimer valid. As noted in *DiGuglielmo*, the insurer in that case "agreed with the insureds to postpone its investigation upon the express condition that plaintiffs waive any claim or defense with respect to the timeliness of any subsequent disclaimer," which waiver was found to be "valid and binding" (6 AD3d at 346). Moreover, the only precedent cited in the decision as support for the *DiGuglielmo* rule concerned the investigation of a *single* ground for disclaimer and, hence, did not raise any question of the propriety of an insurer's waiting to disclaim on a known ground while continuing to investigate *other* possible grounds on which to disclaim (*see 2540 Assoc. v Assicurazioni Generali*, 271 AD2d 282, 284 [2000]). Hence, the statement in *2540 Assoc.* that "reasonable investigation is preferable to piecemeal disclaimers" (271 AD2d at 284), does not support NUFIC's position in this case.

other grounds for rejecting the claim cannot be squared with *Gross.*

Further, the Court of Appeals has made it abundantly clear that the determination of whether the disclaimer was issued "as soon as [was] reasonably possible" (§ 3420 [d]) is made with reference to the time when the insurer first acquired knowledge of the ground upon which it disclaimed. "The timeliness of an insurer's disclaimer is measured *from the point in time when the insurer first learns of the grounds* for disclaimer of liability or denial of coverage" (*Matter of New York Cent. Mut. Fire Ins. Co. v Aguirre,* 7 NY3d 772, 774 [2006] [emphasis added; internal quotation marks omitted], quoting *First Fin. Ins. Co. v Jetco Contr. Corp.,* 1 NY3d 64, 68-69 [2003]; see *also Matter of Allcity Ins. Co. [Jimenez],* 78 NY2d 1054, 1056 [1991] [same]). "When the basis for denying coverage was or should have been readily apparent before the onset of the delay [of disclaimer], the insurer's explanation is insufficient as a matter of law" (*Aguirre,* 7 NY3d at 774 [internal quotation marks omitted], quoting *Jetco,* 1 NY3d at 69). Stated otherwise, "A failure by the insurer to give such notice as soon as is reasonably possible *after it first learns of the accident or of grounds* for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial" (*Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028, 1029 [1979] [emphasis added]).

In view of the foregoing, adhering to the *DiGuglielmo* rule would be tantamount to deliberately setting aside the rule promulgated by the Court of Appeals (and flowing naturally from the language of the statute) that "*once the insurer has sufficient knowledge of facts entitling it to disclaim,* . . . it must notify the policyholder in writing as soon as is reasonably possible" (*Jetco,* 1 NY3d at 66 [emphasis added]). We decline to replace the Court of Appeals' rule with a rule that measures the timeliness of a notice of disclaimer from the point in time when the insurer has completed its investigation of *any and all* possible grounds for rejecting the claim, regardless of when the insurer had sufficient knowledge to disclaim on the particular grounds relied upon.

Not surprisingly, the policy behind section 3420 (d) is best served by applying the rule articulated by the Court of Appeals rather than the *DiGuglielmo* rule. Concerning the legislative intent that motivated the enactment of the law, the Court of Appeals has said:

"While the Legislature specified no particular pe-

riod of time, its words 'as soon as is reasonably possible' leave no doubt that it intended to expedite the disclaimer process, thus enabling a policyholder to pursue other avenues expeditiously. As the Legislature's 1975 Budget Report on the bill that ultimately became section 3420 (d) noted, the purpose 'is to assist a consumer or claimant in obtaining an expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied' (30-Day Budget Report on Bills, Bill Jacket, L 1975, ch 775)" (*Jetco*, 1 NY3d at 68).

The Court of Appeals then rejected the argument of the insurer in *Jetco* that it was entitled to delay disclaiming on late-notice grounds because it had been investigating other possible sources of insurance for the policyholder. The Court explained that the insurer's inquiries, even if of some potential benefit to the insured, "may detrimentally delay the policyholder's own search for alternative coverage. When the insurer promptly disclaims coverage, the policyholder—perhaps with the aid of its own broker or insurance agent—is best motivated by its own interest to explore alternative avenues of protection" (*id.* at 69). The Court of Appeals' reasoning in *Jetco* applies even more strongly here, where the investigation that delayed the disclaimer was NUFIC's exploration of other possible grounds for rejecting the claim—an inquiry manifestly undertaken by NUFIC for its own benefit, not that of the parties seeking coverage.

Moreover, just as we would not permit the insured to delay giving the insurer notice of claim while investigating other possible sources of coverage, we should not permit the insurer to delay issuing a disclaimer on a known ground while investigating other possible grounds for avoiding liability. Any uncertainty as to the existence of coverage is irrelevant to the insurer's ability to issue a timely disclaimer based on the insured's breach of a condition precedent to coverage, such as late notice of claim, that is known to the insurer. As previously discussed, such a disclaimer will not prejudice the insurer's ability later to take the position that no coverage exists, should that prove to be the case.

In the final analysis, NUFIC has no answer to the argument that the *DiGuglielmo* rule is inconsistent with the statute and relevant Court of Appeals precedent. Nor can NUFIC convincingly demonstrate any reason to allow an insurance company that knows it has grounds to reject a claim to delay giving the

insured notice that the claim will be denied. It seems to us that simple fairness, no less than the governing statute, requires us to hold that a person who is covered by an insurance policy, and is about to be denied the benefit of that coverage, is entitled to be informed of the denial "as soon as is reasonably possible." In sum, the *DiGuglielmo* rule should no longer be followed because it is contrary to the plain language of section 3420 (d), inconsistent with the Court of Appeals precedent applying that statute, and antithetical to the policies that statute was intended to advance.[7]

Having established that NUFIC's disclaimer on the ground of late notice is ineffective as against Campbell and TBTA under Insurance Law § 3420 (d), we must address the question of the amount of NUFIC's pro rata share of the settlement. Again, the total amount of the settlement was $5.5 million, of which $2 million was funded by paying out the limits of the primary policies issued by Gulf to Safespan and by American Home to Campbell. Accordingly, Campbell/TBTA argues that the excess portion of the settlement is $3.5 million, to be divided between NUFIC (Safespan's excess carrier) and Westchester (Campbell's excess carrier). Since the limits of the NUFIC and Westchester policies are, respectively, $10 million and $25 million, Campbell/TBTA contends that NUFIC's pro rata share is $999,950.[8]

NUFIC contends that the excess share of the settlement is actually less than $3.5 million because, in NUFIC's view, coverage is available from TBTA's primary carrier, which has not yet made any payment in connection with the *Conklin* action. Specifically, NUFIC states that, during discussions aimed at resolving this matter in June 2008 (before the commencement of this action), Campbell/TBTA's defense counsel in the *Conklin* action, in response to NUFIC's request, produced a document referring to an insurance policy issued to TBTA by nonparty First Mutual Transportation Assurance Company (First Mutual). In his e-mail transmitting the document to NUFIC, Campbell/TBTA's counsel described the document as "the TBTA primary policy." Based on this representation, NUFIC argues

---

**7.** We note that Insurance Law § 3420 (d) applies to excess insurers (*see Zappone*, 55 NY2d at 135 [referring to the predecessor statute, Insurance Law § 167 (8)]).

**8.** Campbell/TBTA derives the figure of $999,950 by multiplying $3.5 million (the amount of the settlement remaining to be funded after the exhaustion of the Gulf and American Home primary policies) by 28.57%, NUFIC's approximate percentage of the combined excess coverage afforded under the NUFIC and Westchester policies.

that First Mutual must contribute to the settlement up to its policy limits before coverage under NUFIC's umbrella policy is triggered.

Notwithstanding what their counsel told NUFIC in June 2008, Campbell and TBTA now argue that the document counsel transmitted to NUFIC at that time is not an insurance policy at all, but a reinsurance policy covering First Mutual with respect to its coverage of TBTA. In support of this position, Campbell and TBTA submitted to Supreme Court the affidavit of the Director of Risk and Insurance Management of the Metropolitan Transportation Authority (MTA) (with which TBTA is affiliated), who asserted that the document in question "is *not* a true and correct copy of a policy issued by [First Mutual] to TBTA. Nor does that policy provide coverage to TBTA."

Supreme Court resolved the dispute over the alleged First Mutual policy by giving effect to the "Other Insurance" provision therein, which, in summary, states that the coverage afforded thereby is excess to any "other insurance protecting the named insured . . . [that] exists," not including other insurance actually purchased by the named insured. Since there is no evidence that TBTA itself purchased other insurance covering its liability in the *Conklin* action, Supreme Court concluded that the First Mutual policy was excess to all other available coverage, meaning that First Mutual was not obligated to contribute to the settlement so long as the NUFIC and Westchester policies had not been exhausted.

On its appeal, NUFIC argues that Supreme Court's treatment of the First Mutual policy contravenes the rules of priority of coverage established in this Court's precedents (*see e.g. Tishman Constr. Corp. of N.Y. v Great Am. Ins. Co.*, 53 AD3d 416 [2008]; *Bovis Lend Lease LMB, Inc. v Great Am. Ins. Co.*, 53 AD3d 140 [2008]). Campbell and TBTA, while not objecting to the court's conclusion that First Mutual need not contribute to the settlement, have cross-appealed on the ground that the court should not have considered the alleged First Mutual policy at all.

In our view, the record is not sufficiently developed for us to render definitive rulings on the nature of the First Mutual policy (if that is what it is) and First Mutual's obligation, if any, to contribute to the settlement. On its face, the document in question does appear to be a reinsurance policy, although it sets forth the terms of an underlying insurance policy issued by First Mutual to the MTA and its affiliates, including TBTA. No-

tably, the meaning of the portion of the document addressing policy limits ("Addendum No. 1") is not transparent; in any event, it is not clear whether the limit provisions are those of the underlying insurance policy or those of the reinsurance contract. Moreover, the document itself is not complete; the word "SCHEDULE" is printed at the top of the first page, and the reinsurer does not seem to be identified. Nor do the affidavits in the record cast much light on the nature of the alleged First Mutual coverage. In particular, the aforementioned affidavit of the MTA's Director of Risk and Insurance Management is terse to the point of being cryptic. In sum, further proceedings are required to develop an evidentiary record sufficient to establish precisely what kind of coverage, if any, is available to TBTA from First Mutual, and how any such coverage affects the amount NUFIC is obligated to contribute to the settlement under applicable case law. Accordingly, we modify to deny Campbell and TBTA summary judgment as to the amount of NUFIC's pro rata share of the settlement.

Finally, NUFIC argues that Campbell and TBTA (the insureds) are no longer the real parties in interest in this matter because the agreement settling the *Conklin* action required Westchester to pay the final $1 million of the settlement consideration on or before July 1, 2009. In this regard, NUFIC interprets a statement in Campbell/TBTA's brief to the effect that Westchester "contributed $3.5 million" to the settlement as an admission that the full amount of the settlement has been paid. If the settlement has been fully paid by insurers—leaving the insureds with no actual interest in the case and making Westchester, the other excess insurer, the real party in interest—the argument that NUFIC's disclaimer was invalid under Insurance Law § 3420 (d) would be unavailing, since "the protections of . . . § 3420 (d) [are] inapplicable to one insurer's claim for reimbursement from another insurer" (*American Guar. & Liab. Ins. Co. v State Natl. Ins. Co., Inc.*, 67 AD3d 488 [2009], citing *Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co.*, 27 AD3d 84, 91-92 [2005]).

An appeal is decided based on the record on which the order appealed from was rendered. There is no indication in the record on this appeal that Westchester paid the final $1 million of the settlement of the *Conklin* action at any time before Supreme Court entered its order granting summary judgment to Campbell/TBTA on May 21, 2009 (more than a month before the due date of the final payment under the settlement agree-

ment). Moreover, although NUFIC was at all relevant times aware of the terms of the settlement agreement, in the motion practice leading to the order appealed from, NUFIC never raised the argument that Campbell and TBTA would cease to be real parties in interest upon Westchester's payment of the final portion of the settlement on July 1, 2009, as required by the settlement agreement. Thus, no basis exists for us to consider, in reviewing the order appealed from, whether Campbell and TBTA ceased to be real parties in interest at some point after Supreme Court granted them summary judgment. It suffices to say that there is no indication that they were not real parties in interest when the order under review was rendered.[9]

Accordingly, the order of the Supreme Court, New York County (Walter A. Tolub, J.), entered May 21, 2009, which granted plaintiffs' motion for summary judgment and denied defendant's cross motion for summary judgment, should be modified, on the law, to deny plaintiffs summary judgment on the issues of defendant's pro rata share of the settlement of the underlying personal injury action and the dollar amount of such pro rata share, and otherwise affirmed, without costs.

SAXE, J.P., ABDUS-SALAAM and ROMÁN, JJ., concur with FRIEDMAN, J.

Order, Supreme Court, New York County, entered May 21, 2009, modified, on the law, to deny plaintiffs summary judgment on the issues of defendant's pro rata share of the settlement of the underlying personal injury action and the dollar amount of such pro rata share, and otherwise affirmed, without costs.

---

**9.** We note that, during the pendency of this appeal, NUFIC moved in Supreme Court to renew and vacate the order appealed from, based on its belief that Westchester has made the final settlement payment, thereby depriving Campbell and TBTA of their status as real parties in interest in this dispute. By order entered March 24, 2011, Supreme Court denied that motion. NUFIC has filed a notice of appeal from that order. While we are, in conjunction with the decision of this appeal, denying NUFIC's motion to consolidate this appeal with its unperfected appeal from the March 2011 order (see 2012 NY Slip Op 61289[U] [decided simultaneously herewith]), nothing said herein should be construed to prejudge the merits of the appeal from the March 2011 order, which is not under review at this time.