[801 NE2d 835, 769 NYS2d 459]

FIRST FINANCIAL INSURANCE COMPANY, Respondent, v JETCO CON-
TRACTING CORP., Appellant, et al., Defendants. (And a Third-
Party Action.)

Decided November 20, 2003

## POINTS OF COUNSEL

*Goddard Ronan & Dineen, L.L.P.,* Garden City (*Joseph P. Dineen* of counsel), for appellant. I. Investigating possible alternate sources of insurance is not a valid excuse for an insurer's delayed notification of disclaimer under Insurance Law § 3420 (d). (*Matter of Firemen's Fund Ins. Co. of Newark v Hopkins,* 88 NY2d 836; *McGinnis v Mandracchia,* 291 AD2d 484; *City of New York v Northern Ins. Co.,* 284 AD2d 291.) II. First Financial's 48-day delay in disclaiming coverage based on late notice was unreasonable as a matter of law and precluded First Financial from denying coverage to Jetco. (*Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028; *Wasserheit v New York Cent. Mut. Fire Ins. Co.,* 271 AD2d 439; *Matter of Nationwide Mut. Ins. Co. v Steiner,* 199 AD2d 507; *Matter of Colonial Penn Ins. Co. v Pevzner,* 266 AD2d 391; *West 16th St. Tenants Corp. v Public Serv. Mut. Ins. Co.,* 290 AD2d 278; *Squires v Robert Marini Bldrs.,* 293 AD2d 808.)

*Ford Marrin Esposito Witmeyer & Gleser, L.L.P.,* New York City (*James M. Adrian* and *Rebecca J. Foote* of counsel), for respondent. I. Under New York Insurance Law § 3420 (d), an insurer may wait a reasonable period of time to notify the insured of denial of coverage until after the insurer has conducted an investigation into alternate, third-party sources of insurance benefitting the insured. (*Zappone v Home Ins. Co.,* 55 NY2d 131; *Excelsior Ins. Co. v Antretter Contr. Corp.,* 262 AD2d 124; *Allstate Ins. Co. v Gross,* 27 NY2d 263; *Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028; *Matter of Firemen's Fund Ins. Co. of Newark v Hopkins,* 88 NY2d 836.) II. An unexcused delay in notification of 48 days is not unreasonable as a matter of law under Insurance Law § 3420 (d). (*Hartford Ins. Co. v*

*County of Nassau,* 46 NY2d 1028; *Reynolds Metal Co. v Aetna Cas. & Sur. Co.,* 259 AD2d 195; *General Acc. Ins. Group v Cirucci,* 46 NY2d 862; *TIG Ins. Co. v Town of Cheektowaga,* 142 F Supp 2d 343; *Mount Vernon Fire Ins. Co. v Harris,* 193 F Supp 2d 674; *Wilczak v Ruda & Capozzi,* 203 AD2d 944; *Allstate Ins. Co. v Gross,* 27 NY2d 263; *City of New York v Northern Ins. Co. of N.Y.,* 284 AD2d 291; *Matter of Colonial Penn Ins. Co. v Pevzner,* 266 AD2d 391; *McGinnis v Mandracchia,* 291 AD2d 484.)

### OPINION OF THE COURT

Chief Judge KAYE.

The United States Court of Appeals for the Second Circuit, by two certified questions, has asked us to clarify whether an insurer's 48-day delay in notifying a policyholder of denial of coverage is unreasonable as a matter of law under Insurance Law § 3420 (d), where the purpose of the delay is to investigate the existence of other, third-party sources of insurance. The central issue is whether such delay is excusable, even though the existence of alternative sources is not a factor in the insurer's decision to deny coverage. We conclude that once the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage, it must notify the policyholder in writing as soon as is reasonably possible. Furthermore, an unexcused 48-day delay is unreasonable as a matter of law.

On July 9, 1998, falling scaffolding hit Gavin Hanna—an employee of Jetco's scaffolding subcontractor—while he was at work restoring the facade of a New York University (NYU) building. On January 6, 1999, Hanna brought suit in Bronx County Supreme Court against Jetco and NYU for negligence under various state statutes. Jetco's president and general manager learned of the accident the very day it occurred but failed to inform its commercial general liability insurer, First Financial Insurance Company, which learned of the accident from NYU on February 23, 1999. By letter dated March 2, 1999, First Financial's authorized agent advised the policyholder that this was "a late notice situation," and reserved its right to deny coverage because Jetco had failed to comply with the policy's provision requiring notice of an occurrence as soon as practicable. On March 30, 1999, First Financial confirmed that Jetco's president had known of the accident since the day it occurred. However, the insurer failed to notify Jetco of its decision to deny coverage until May 17, 1999—48 days after First

Financial's agent confirmed the grounds for disclaiming coverage. The insurer claims that this delay was excusable because it resulted from an investigation into other sources of insurance for Jetco.

First Financial sought a declaratory judgment from the United States District Court for the Southern District of New York that the policy did not cover Jetco for Hanna's suit. Whether the 48-day delay was reasonable as a matter of law became material because the insurer's failure to provide notice as soon as is reasonably possible precludes effective disclaimer, even though the policyholder's own notice of the incident to its insurer is untimely (*see Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1029 [1979]).

The District Court concluded that the insurer's 48-day delay was reasonable because its investigation into alternative sources of insurance was clearly for Jetco's benefit, which the court felt should be encouraged even though the insurer would itself have denied coverage regardless of the existence of any other insurance benefitting Jetco.[1] The District Court refused to read Insurance Law § 3420 (d) in a way that would prohibit an insurer from waiting to notify a policyholder of denial of coverage until after the insurer has conducted an alternative source investigation, because insurance companies would be forced to disclaim coverage before seeking additional sources of coverage.[2] In its appeal to the Second Circuit, Jetco challenged the District Court's finding that the insurer's delayed disclaimer was reasonable under Insurance Law § 3420 (d).

Concerned that New York law is unclear as to whether an insurer's investigation into other, third-party sources of insurance is a sufficient excuse for delay, and if not, whether an unexcused delay of 48 days could be unreasonable as a matter of law—both novel policy issues with wider implications—the Second Circuit certified two questions to this Court.

"1. Under N.Y. Ins. Law § 3420(d), may an insurer

---

**1.** Three witnesses testified at trial that First Financial's investigation into other sources of insurance did not affect insurer's decision to deny coverage. In the words of one witness: "Whether there is an additional insure[r] really has no bearing on whether it's late. If it's late, it's late and we will deny coverage."

**2.** The court further noted that Jetco suffered no prejudice from the time it took First Financial to investigate additional sources of coverage—though correctly observing that prejudice is of no legal relevance here (*see Allstate Ins. Co. v Gross*, 27 NY2d 263, 269-270 [1970]).

who has discovered grounds for denying coverage wait to notify the insured of denial of coverage until after the insurer has conducted an investigation into alternate, third-party sources of insurance benefitting the insured, although the existence or non-existence of alternate insurance sources is not a factor in the insurer's decision to deny coverage?

"2. If an investigation into alternate sources of insurance is not a proper basis for delayed notification under N.Y. Ins. Law § 3420(d), is an unexcused delay in notification of 48 days unreasonable as a matter of law under § 3420(d)?" (322 F3d 750, 752 [2003].)

We now answer the first question in the negative, and the second in the affirmative.

## Discussion

New York Insurance Law § 3420 (d) provides:

"If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."

While the Legislature specified no particular period of time, its words "as soon as is reasonably possible" leave no doubt that it intended to expedite the disclaimer process, thus enabling a policyholder to pursue other avenues expeditiously. As the Legislature's 1975 Budget Report on the bill that ultimately became section 3420 (d) noted, the purpose "is to assist a consumer or claimant in obtaining an expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied" (30-Day Budget Report on Bills, Bill Jacket, L 1975, ch 775).

That notice of disclaimer must be prompt, however, still leaves unresolved the questions of *when* promptness is to be measured from, and *whether* as a matter of law an insurer may delay notification in order to investigate other sources of insurance potentially available to its policyholder.

As we have made clear, "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns

of the grounds for disclaimer of liability or denial of coverage" (*Matter of Allcity Ins. Co. [Jimenez]*, 78 NY2d 1054, 1056 [1991], citing *Hartford*, 46 NY2d at 1029). Moreover, an insurer's explanation is insufficient as a matter of law where the basis for denying coverage was or should have been readily apparent before the onset of the delay (*Matter of Firemen's Fund Ins. Co. of Newark v Hopkins*, 88 NY2d 836, 837-838 [1996]). Here, First Financial was aware that Jetco's claim was untimely when the insurer learned of the accident on February 23, 1999 (as noted in its March 2 letter to Jetco), or at the latest on March 30 (when its agent confirmed that Jetco's president had known of the accident since the day it occurred). For present purposes we assume that on March 30, 1999, the clock began to run on First Financial's obligation to give written notice to Jetco disclaiming coverage.

An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay. While Insurance Law § 3420 (d) speaks only of giving notice "as soon as is reasonably possible," investigation into issues affecting an insurer's decision whether to disclaim coverage obviously may excuse delay in notifying the policyholder of a disclaimer (*see e.g. 2540 Assoc. v Assicurazioni Generali*, 271 AD2d 282, 284 [1st Dept 2000] [delay reasonable because of insurer's need to conduct a "prompt, diligent and good faith investigation of the claim"]; *DeSantis Bros. v Allstate Ins. Co.*, 244 AD2d 183, 184 [1st Dept 1997] [delay reasonable because of need to review 500-page file and conduct legal research]; *Aetna Cas. & Sur. Co. v Brice*, 72 AD2d 927, 928-929 [4th Dept 1979] [delay reasonable due to insurer's difficulty gathering evidence because all those involved in accident had been killed]).

We cannot accept, however, that delay simply to explore other sources of insurance for the policyholder—an excuse unrelated to the insurer's own decision to disclaim—is permissible. While First Financial urges that, as a matter of policy, such inquiries should be encouraged because they are for the benefit of the insured, we note that they may also be in the insurer's interest in reducing its ultimate risk, and further may detrimentally delay the policyholder's own search for alternative coverage. When the insurer promptly disclaims coverage, the policyholder—perhaps with the aid of its own broker or insurance agent—is best motivated by its own interest to explore alternative avenues of protection.

Having concluded that investigation into possible other sources of insurance is not an acceptable reason for delayed

disclaimer, we reach the Second Circuit's second question: Is an unexcused delay of 48 days unreasonable as a matter of law?

On the one hand, we appreciate the desire for a fixed yardstick against which to measure the reasonableness, or unreasonableness, of an insurer's delay. In this respect we note that the Appellate Division several times has found fixed periods of less than 48 days unreasonable as a matter of law (*see e.g. West 16th St. Tenants Corp. v Public Serv. Mut. Ins. Co.*, 290 AD2d 278, 279 [1st Dept 2002] [30 days]; *Matter of Nationwide Mut. Ins. Co. v Steiner*, 199 AD2d 507, 508 [2d Dept 1993] [41 days]; *Matter of Colonial Penn Ins. Co. v Pevzner*, 266 AD2d 391 [2d Dept 1999] [41 days]; *Squires v Robert Marini Bldrs.*, 293 AD2d 808, 810 [3d Dept 2002] [42 days]). On the other hand, the difficulty with imposing a fixed time period—which the Legislature scrupulously avoided—is that most often the question whether a notice of disclaimer has been sent "as soon as is reasonably possible" will be a question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage (*see Hartford*, 46 NY2d at 1030; *Allstate Ins. Co. v Gross*, 27 NY2d 263, 270 [1970]).

One thing is clear: that it is the responsibility of the insurer to explain its delay. Where, in *Hartford*, the insurer gave absolutely no explanation for its delay, this Court concluded that a delay of 62 days was, as a matter of law, unreasonable. Clearly a delay of 48 days in those circumstances would have been as well. Here, we see no material difference between a delay that is *unexplained* and a delay that is *unexcused*, meaning the explanation is unsatisfactory. The insurer's 48-day delay in giving written notice, on the facts before us, was unreasonable as a matter of law.

Accordingly, certified question No. 1 should be answered in the negative and certified question No. 2 should be answered in the affirmative.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question No. 1

answered in the negative and certified question No. 2 answered in the affirmative.