[856 NYS2d 1]

THOSE CERTAIN UNDERWRITERS AT LLOYDS, LONDON, Appellant,
v CATHY GRAY et al., Defendants, and HOOVER CONSTRUC-
TION, INC., Respondent.

First Department, November 15, 2007

APPEARANCES OF COUNSEL

*Abrams, Gorelick, Friedman & Jacobson, P.C.*, New York City (*Michael E. Gorelick* and *Allison G. Leff* of counsel), for appellant.

*Nicoletti Gonson Spinner & Owen LLP*, New York City (*Jamie T. Packer* of counsel), for respondent.

**OPINION OF THE COURT**

KAVANAGH, J.

On this record, it cannot be said that plaintiff has established as a matter of law that the 56 days it took it to issue its disclaimer was reasonable. Factual issues abound as to what plaintiff knew about the claim and when it learned it, barring entry of such a judgment.

While much is in dispute, what has been established is that on April 13, 2004, respondent Cathy Gray obtained, through an independent broker, a general commercial liability policy from

plaintiff Lloyds of London to insure a vacant brownstone she owned and was about to have renovated. The policy period ran for three months, and contained a clause that excluded from coverage any claims involving personal injuries sustained on the premises by "any employee of an independent contractor contracted by you or on your behalf."[1] Gray retained respondent Hoover Construction Inc. to serve as general contractor on the project. On November 6, 2004 respondent Elizardo Valdez, an employee of a subcontractor retained by Hoover on the project, fell from a ladder while working on the premises and was injured. Valdez subsequently commenced a Labor Law action against Hoover and Gray, and, in his verified complaint, claims upon information and belief that at the time of the accident he "was an independent contractor hired and/or retained by defendant Hoover, Inc. to perform work" at Gray's premises.

The complaint was served on Gray on or about April 13, 2005, and she claims to have forwarded it to the broker who procured the policy within one week of her being served. Since there have been no depositions conducted and little performed by way of pretrial discovery in this action, it is not yet known when exactly the broker first contacted plaintiff and informed it of the specifics of the claim. Plaintiff acknowledges receiving a copy of the verified complaint on May 16, 2005, and nine days later, on May 25, 2005, retaining an investigator to review the claim and in particular to ascertain the facts surrounding the subject accident including whether Valdez was an independent contractor retained on behalf of or by Gray. The investigator contacted Gray by telephone on May 26, 2005, but asserts that due to their "hectic schedules," he was unable to arrange for an interview until three weeks later, on June 17, 2005.

At the interview, Gray provided the investigator with a written statement in which she confirmed what was already spelled out in the verified complaint: she hired Hoover to be the general contractor on the renovation of the building and from the wording of the complaint it was her understanding that Valdez was injured while working on the premises for a subcontractor. Nineteen days later the investigator forwarded Gray's statement and his report to plaintiff and on July 11, 2005, plaintiff

---

1. The clause detailing the grounds for the exclusion was entitled "Employees of Independent Contractors Endorsements" and was located on the 67th page of the 89 page policy.

notified Gray in writing that it was disclaiming coverage under the policy.[2]

An insurer must serve written notice on the insured of its intent to disclaim coverage under its policy "as soon as is reasonably possible" (Insurance Law § 3420 [d]). The reasonableness of the timing of a disclaimer is measured from the date when the insurer knew or should have known that grounds for the disclaimer existed (*see First Fin. Ins. Co. v Jetco Contr. Corp.*, 1 NY3d 64, 68-69 [2003]). If such grounds were, or should have been, "readily apparent" to the insurer when it first learned of the claim, any subsequent delay in issuing the disclaimer is unreasonable as a matter of law (*id.* at 69). If it is not readily apparent, the insurer has the right, albeit the obligation, to investigate, but any such investigation must be promptly and diligently conducted (*see id.*; *see also Ace Packing Co., Inc. v Campbell Solberg Assoc., Inc.*, 41 AD3d 12 [2007]; *Structure Tone v Burgess Steel Prods. Corp.*, 249 AD2d 144, 145 [1998]; *Norfolk & Dedham Mut. Fire Ins. Co. v Petrizzi*, 121 AD2d 276, 278 [1986], *lv denied* 68 NY2d 611 [1986]).

There is no objective standard against which the time it takes an insurer to issue its disclaimer can be measured. It is a fact-sensitive inquiry that is based upon all of the surrounding circumstances and focuses on the period between when the insurer first learned of the grounds for the disclaimer and finally served its written notice disclaiming coverage on the insured. However, there is no doubt that the insurer has an obligation to expedite the process and act promptly, and it bears the burden of justifying any ensuing delay (*see First Fin. Ins. Co.*, 1 NY3d at 69; *Matter of Firemen's Fund Ins. Co. of Newark v Hopkins*, 88 NY2d 836, 837 [1996]). Only in an exceptional case will an insurer's written notice of disclaimer be determined to have been served in a timely manner as a matter of law (*Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1030 [1979]). Here, there are significant factual issues surrounding the 56 days it took plaintiff to formally notify Gray of its intent to disclaim after it says it first learned of the existence of the claim. The existence of these issues require that the motion for summary judgment be denied.

For plaintiff to prevail on the facts presented it must establish as a matter of law that (1) it was not "readily apparent"

---

**2.** The investigator's report was not included in the record and has not been provided to respondents. Counsel for plaintiff at oral argument before this Court stated that the report simply contained a cover letter and a copy of Gray's statement.

from the content of the verified complaint that grounds for the disclaimer in fact existed; and (2) the investigation, which took a total of 47 days to complete and appears to have only involved the taking of a single statement from one witness, was promptly and diligently conducted.

There can be little doubt that plaintiff's attention was immediately drawn to the applicability of the exclusionary clause contained in the policy when it first received a copy of the verified complaint on May 16, 2005. Its instructions to its investigator and the limited focus of his investigation are stark proof of that fact. While it is true that the complaint is couched in terms of "information and belief," the fact is that the allegations made by the injured worker are in affidavit form and, as they relate to the exclusion, involve facts that are clearly within his personal knowledge. Valdez's employment status was not then, and never has been, an issue in this litigation. Simply stated there is no reason from a fair reading of the complaint to question Valdez's assertions that at the time of the accident he was employed by a subcontractor working on the project (*see Squires v Marini Bldrs.*, 293 AD2d 808, 810 [2002], *lv denied* 99 NY2d 502 [2002]). Even Gray in her statement to plaintiff's investigator acknowledged that she learned that Valdez was employed by a subcontractor "from Hoover and reading the lawsuit." Surely, what she was able to glean from the wording of the complaint should have been readily apparent to plaintiff when it first received a copy of this document on May 16, 2005. At a bare minimum, a legitimate question exists as to whether at that time it should have been readily apparent to plaintiff that grounds for disclaimer of coverage under this policy did indeed exist.

But even if Valdez's employment status when injured were not obvious from the complaint, plaintiff must still justify why it took 56 days to notify Gray that it was denying coverage under the policy. Beyond its investigator's personal assertion that "hectic schedules" prevented him from interviewing Gray any earlier than June 17, 2005, or more than three weeks after he was retained, plaintiff makes no effort to account for this delay. What is known is that Gray, at the time, was a single registered nurse living in the Bronx and was contacted by the investigator by telephone on May 26, 2005, or one day after he received his assignment. It is not now known what, if anything, the investigator learned from this initial conversation or why the interview of Gray could not be conducted over the telephone.

It is also not known what it was about their schedules that required such a long delay between the date of this phone call and the ensuing interview, or why it took the investigator an additional three weeks after obtaining Gray's statement to complete and forward his final report to plaintiff. On these facts, we just do not know if plaintiff's investigator used his best efforts to diligently perform this investigation and complete it within a reasonable period of time after receiving the assignment.

Coincidently, it is impossible to determine from this record why plaintiff, if, as it claims, it first received notice of the claim on May 16, 2005, did not seek to disclaim on the grounds that Gray failed to notify it of the claim as soon as practical after she learned of its existence.[3] Gray acknowledges being served with the verified complaint on or about April 13, 2005, claims that she then forwarded the papers to her broker within the week, and does not claim to have ever personally notified plaintiff. It is well established that an insured's failure to provide timely notice of a claim relieves the insurer of its obligation under the policy regardless of whether the insurer can demonstrate that it was prejudiced by the delay (*Rekemeyer v State Farm Mut. Auto. Ins. Co.*, 4 NY3d 468, 474-475 [2005]). Even relatively short periods of time, if not justified by the insured, have been found to be unreasonable as a matter of law, and thus worked to deprive the insured of the benefits of the policy (*RMD Produce Corp. v Hartford Cas. Ins. Co.*, 37 AD3d 328, 331 [2007], *lv denied* 8 NY3d 816 [2007]; *see e.g. Deso v London & Lancashire Indem. Co. of Am.*, 3 NY2d 127 [1957] [51 days for insured to provide carrier with notice of claim]; *Rushing v Commercial Cas. Ins. Co.*, 251 NY 302 [1929] [22 days]; *Haas Tobacco Co. v American Fid. Co.*, 226 NY 343 [1919] [10 days]; *Doe Fund, Inc. v Royal Indem. Co.*, 34 AD3d 399 [2006] [eight months after the accident, three months after service of summons and complaint]; *Power Auth. of State of N.Y. v Westinghouse Elec. Corp.*, 117 AD2d 336 [1986] [53 days]).

Given that Gray concedes that plaintiff was not notified for more than a month after she received the complaint and first learned of the claim herself, one must wonder why plaintiff did

---

**3.** The insurance policy contains a clause that requires the insured to notify the insurer of the existence of any claim or suit as soon as practical after the insured learns of it.

not choose to disclaim on this basis.[4] Gray did promptly notify her broker some time in mid-April, and the broker, over a month later, faxed plaintiff a copy of the verified complaint. What is not known is what contact, if any, the broker had with plaintiff regarding this claim *prior* to faxing it a copy of the complaint on May 16, 2005. If in fact the broker did make contact with plaintiff before faxing it a copy of the complaint, that may well explain why plaintiff has not sought to disclaim for failure of its insured to promptly notify it of the complaint. And that in turn raises additional questions as to the timeliness of the disclaimer that plaintiff did issue.

Until the issues raised by these questions have been fully resolved, plaintiff has not established as a matter of law that its notice of disclaimer was timely.

Accordingly, the order of Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered December 19, 2006, which, upon reargument, vacated the court's prior order and denied plaintiff's motion for summary judgment, should be affirmed, with costs.

McGuire, J. (concurring). Plaintiff issued to defendant Cathy Gray a policy of general liability insurance, providing Gray with liability insurance coverage for a building she owned in Manhattan. The policy contained an independent contractor endorsement excluding from coverage personal injuries sustained by employees of independent contractors retained by Gray. Gray subsequently hired defendant Hoover Construction, Inc. to serve as the general contractor of renovation work to be performed at the insured premises. Hoover, in turn, hired defendant Elizardo Valdez to work on the project. On November 6, 2004, Valdez sustained personal injuries while working at the insured premises.

On April 11, 2005, Valdez commenced an action in Supreme Court, Kings County, against Gray and Hoover to recover damages he sustained as a result of the accident. In his complaint, Valdez alleged on "information and belief" that he "was an independent contractor hired and/or retained by . . . Hoover." Gray, who asserted that she did not learn of Valdez's accident until she was served with the summons and complaint in that action, notified her "insurance agent [i.e., nonparty Nancy Hardy Insurance Agency] within a week after getting the

---

4. It appears to be conceded that the broker who was notified by Ms. Gray was her agent for these proceedings.

lawsuit." It is unclear when exactly plaintiff learned of Valdez's action. By letter dated July 11, 2005, plaintiff disclaimed coverage based on the independent contractor exclusion.

On August 3, 2005, plaintiff commenced this action against Gray, Hoover and Valdez seeking a declaration that plaintiff is not obligated to defend or indemnify Gray. In support of its motion for summary judgment, plaintiff submitted the pleadings in both this action and Valdez's action, the policy, the disclaimer letter, and an unsworn statement by Gray. Supreme Court granted the motion and declared that plaintiff had no duty to defend or indemnify Gray.

Hoover moved for reargument claiming that Supreme Court erred in granting the motion because plaintiff failed to submit evidence in admissible form demonstrating that the disclaimer was timely. Specifically, Hoover asserted that plaintiff failed to substantiate when it first became aware of the ground for disclaimer. Hoover also asserted that plaintiff failed to justify its delay in issuing its disclaimer. Supreme Court granted the motion for reargument and, upon reargument, denied plaintiff's motion for summary judgment.

As the party seeking summary judgment, plaintiff bore the initial burden of making a prima facie showing of entitlement to judgment as a matter of law (*see* CPLR 3212 [b]). Here, plaintiff was required to make a prima facie showing that it issued its disclaimer "as soon as [wa]s reasonably possible" (Insurance Law § 3420 [d]). In this regard, plaintiff needed to show (1) the amount of time it took to disclaim coverage, measured from the point in time when it first learned of the ground for disclaimer, and (2) an excuse for any delay in notifying Gray of the disclaimer (*see Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028 [1979]; *see also First Fin. Ins. Co. v Jetco Contr. Corp.*, 1 NY3d 64, 68-69 [2003]).

Plaintiff failed to meet its initial burden because it did not submit evidence in admissible form demonstrating when it first learned of the ground for disclaimer, i.e., the independent contractor exclusion. While plaintiff's counsel asserted that Gray notified plaintiff of Valdez's action on May 16, 2005, no evidence in admissible form supported that assertion (*see Zuckerman v City of New York*, 49 NY2d 557, 563 [1980] [affirmation of attorney who did not have personal knowledge of facts lacks evidentiary value]; *Batista v Santiago*, 25 AD3d 326 [2006]; *Puritan Ins. Co. v Continental Cas. Co.*, 195 AD2d 291 [1993]). Similarly, plaintiff's counsel's recitation of the steps plaintiff al-

legedly took to investigate the claim and the timing of those steps was not corroborated by evidence in admissible form, except for a reference in the disclaimer letter to the effect that on June 17, 2005 an independent adjuster confirmed that Valdez was the employee of an independent contractor. While plaintiff submitted the independent adjuster's affidavit with its reply papers, this affidavit could not be used to remedy basic deficiencies in plaintiff's prima facie showing (*see Rengifo v City of New York*, 7 AD3d 773 [2004]; *Migdol v City of New York*, 291 AD2d 201 [2002]). For similar reasons, such deficiencies could not be remedied by the notice of claim form, dated May 16, 2005, which was completed by Gray's insurance agent and notified plaintiff of Valdez's accident and claim, since it was submitted by plaintiff for the first time in opposition to Hoover's motion for reargument.[1]

Accordingly, I would affirm the order granting Hoover's motion for reargument which, upon reargument, denied plaintiff's motion for summary judgment.[2]

TOM, J.P., and ANDRIAS, J., concur with KAVANAGH, J.; SWEENY and McGUIRE, JJ., concur in a separate opinion by McGUIRE, J.

Order, Supreme Court, Bronx County, entered December 19, 2006, affirmed, with costs.

---

**1.** Valdez's allegation that he was an "independent contractor" was conclusory and, even if factually supported, would not have been binding on plaintiff. To the contrary, plaintiff had the right to investigate the claim before determining whether to disclaim (*see Ace Packing Co., Inc. v Campbell Solberg Assoc., Inc.*, 41 AD3d 12, 15 [2007] [policy of "disclaim now and investigate later" not in insurers' or insureds' interests]).

**2.** Why plaintiff did not disclaim on the ground that Gray failed timely to notify plaintiff of Valdez's claim is an issue that has no bearing on whether the disclaimer was issued as soon as was reasonably possible. The majority's speculation on this issue, accordingly, is irrelevant.