**GREAT AMERICAN E & S INSURANCE COMPANY**

v.

**END ZONE PUB & GRILL OF NARRAGANSETT, INC. et al.**

No. 2010–375–Appeal.

Supreme Court of Rhode Island.

June 22, 2012.

Michael J. Chefitz, for Plaintiff.

Lewis J. Paras, Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

SUTTELL, Chief Judge for the Court.

The applicability of an assault and/or battery exclusion in a commercial general liability insurance policy is at issue in this appeal. Great American E & S Insurance Company (Great American or insurance company) filed a declaratory-judgment action against its insured, End Zone Pub & Grill of Narragansett, Inc. (End Zone), and Michael Gondusky (defendant), who previously had filed a civil suit against End Zone alleging that he had been seriously injured by two doormen who were employed by End Zone. The Superior Court entered both an order granting Great American's motion for summary judgment and a declaratory judgment decreeing that Great American "owe[d] no duty to defend or obligation to indemnify relative to the underlying action brought by Michael Gondusky against End Zone * * *." Mr. Gondusky now appeals from the Superior Court's judgment.[1] This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The relevant facts are not in dispute and may be summarized as follows.[2] On the

1. Although End Zone took part in the proceedings below, the record reflects that only Mr. Gondusky filed a notice of appeal to this Court.

2. We glean the facts from documents within the Superior Court's file, the transcript provided to this Court, as well as the parties' submissions. We also note that, although End Zone did not appeal to this Court, End Zone stated in its answers to interrogatories in the underlying case that "no force was ever used against [Mr. Gondusky]," that "he was not pushed by [the doorman] or anyone else associated with [End Zone]," and that it was End Zone's understanding that Mr. Gondusky "fell down in the parking lot * * * due to no actions by [End Zone] or its employees."

night of February 16, 2002, defendant was a patron at End Zone. He left End Zone at approximately 12:30 a.m. to go to a local pizza parlor, but attempted to reenter the pub fifteen to twenty minutes later, saying that he had to use the bathroom. Two doormen working outside of End Zone refused to let defendant reenter the pub and informed him that he would have to pay the cover charge to gain admission.

According to defendant, he told the doormen that he had been in the bar earlier and already had paid a cover charge, and he asked them why he would have to pay more money just to use the bathroom. The doormen, however, insisted that defendant would be allowed into the pub only if he paid an additional cover charge. The defendant stated that he told the doormen, "that's crazy," and said that he "didn't understand." In his deposition,[3] defendant alleged that "the next thing [he knew,] one of them punched [him] in the side of the head, and the other one stepped on [his] foot and pushed [him] straight backwards." As a result of the doormen's actions, defendant alleges he lost his balance, fell backward, hit his head on the sidewalk, and lost consciousness. The defendant further alleges that as a result of this incident, he suffered a subdural hematoma, resulting "in severe daily headaches," "severe pain and discomfort in [his] right shoulder which restricted the range of motion in [his] right arm," and an anosmia, resulting in "a permanent loss of [his] sense of smell."

The defendant filed a complaint against End Zone in Washington County Superior Court in April 2004. In his complaint, defendant asserted that he "received serious personal injuries as a result of negligent actions of unnamed employees of [End Zone] who used excessive force in negligently denying [defendant's] lawful re-entry." Great American, End Zone's insurance carrier, contends that the suit defendant filed against End Zone "was the first notice of [Mr. Gondusky's] claim" that it received. Discovery procedures commenced, and defendant answered interrogatories from End Zone on September 16, 2005. On October 24, 2005, Great American and defendant spoke in an effort to settle the case, with no success. In November 2005, Great American sent written notice to defendant stating that coverage may be denied based upon an assault and/or battery exclusion contained in the commercial general liability insurance policy (policy) that it had issued to End Zone.[4]

Striking the first blow, on May 12, 2006, Great American filed a complaint in Providence County Superior Court, seeking a declaratory judgment that the insurance company "owe[d] no duty to defend, obligation of indemnification or other coverage obligation" under the policy. Within the complaint, Great American alleged that the assault and/or battery exclusion in an endorsement to the policy precluded its cov-

---

3. An official transcript of Mr. Gondusky's deposition was not submitted to this Court; however, a partial copy of the deposition was attached as an exhibit to Great American's memorandum in support of its motion for summary judgment.

4. The assault and/or battery exclusion stated: "It is agreed that this insurance does not apply to any liability arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.
"Furthermore, there is no coverage for assault and/or battery claim against the insured if the claim is based on the alleged failure of the insured to protect individuals whether or not patrons, or involves the negligent selection, training, employment, supervision or control of any individual."

erage obligations "with respect to the claims alleged by Mr. Gondusky in the underlying action, or any claims arising from the incident that is the subject matter thereof." On January 11, 2008, the motion for declaratory judgment was transferred to Washington County Superior Court "in the interest of obtaining a more expedited trial." Thereafter, on December 12, 2008, Great American filed a motion for summary judgment.

The defendant objected to Great American's motion and raised two arguments to support his objection.[5] He first argued that Great American should not be allowed to deny coverage based upon the assault and/or battery exclusion because it failed to raise the exclusion as a defense within a reasonable time. The defendant also argued that the assault and/or battery exclusion rendered coverage under the policy illusory and, therefore, should not be enforced to deny coverage. After a hearing on March 16, 2009, the hearing justice granted plaintiff's motion for summary judgment. On June 18, 2009, both an order granting Great American's motion for summary judgment and a declaratory judgment were entered "decreeing that [Great American] owe[d] no duty to defend or obligation to indemnify relative to the underlying action brought by Michael Gondusky against End Zone * * *." The defendant filed a timely notice of appeal on July 8, 2009. Further facts will be supplied as may be germane to the issues on appeal.

## II

### Standard of Review

The grant of a motion for summary judgment is reviewed by this Court

*de novo,* "employing the same standards and rules used by the hearing justice." *Generation Realty, LLC v. Catanzaro,* 21 A.3d 253, 258 (R.I.2011) (quoting *Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I.2009)). "We will affirm a lower court's decision 'only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Air Distribution Corp. v. Airpro Mechanical Co.,* 973 A.2d 537, 540 (R.I.2009)). "Moreover, 'the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Narragansett Improvement Co. v. Wheeler,* 21 A.3d 430, 438 (R.I.2011) (quoting *DeSantis v. Prelle,* 891 A.2d 873, 877 (R.I.2006)).

## III

### Discussion

On appeal, defendant asserts two reasons supporting his contention that the trial justice erred in granting summary judgment in favor of Great American. First, he argues that Great American committed "an unfair claims practice" by failing to satisfy its duty to inform him of its denial of coverage within a reasonable period under Rhode Island's Unfair Claims Settlement Practices Act (act), G.L.1956 chapter 9.1 of title 27. Second, he alleges that the assault and/or battery exclusion is illusory and, thus, unenforceable.

The defendant first claims that Great American failed to deny coverage

5. End Zone also filed an objection to Great American's motion for summary judgment and "join[ed] and support[ed]" Mr. Gon-

dusky's memorandum in support of its own objection.

based on the assault and/or battery exclusion in the policy within a reasonable amount of time and that the insurance company should, therefore, be precluded from asserting that the exclusion applies under § 27–9.1–4. This section of the act outlines "improper claims practice[s]" of insurers conducting business in this state; one of which is when an insurance carrier "[f]ail[s] to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to the claim or claims." Section 27–9.1–4(a)(7).

Our review of the act, however, causes us to conclude that it does not provide defendant with the relief he currently seeks from this Court. The stated purpose of the act "is to set forth standards for the investigation and disposition of claims arising under [Rhode Island insurance] policies * * *." Section 27–9.1–1. The act explicitly states that "[n]othing contained in [the act] shall be construed to create or imply a private cause of action for violation of [the act]." *Id.; see Solomon v. Progressive Casualty Insurance Co.*, 685 A.2d 1073, 1075 (R.I.1996) (mem.) (holding that the plaintiff's complaint for compensatory relief alleging that an insurance company engaged in unfair and deceptive trade practices in violation of the act was without merit "by the express terms of the statute"). Furthermore, the act sets forth the required procedure when a complaint is received by the director of business regulation, and it states the available penalties if the director finds, after a hearing, that a violation of the act has occurred. *See* §§ 27–9.1–5 and 27–9.1–6. Clearly, the act, upon which defendant relies, does not provide him with a private cause of action.

Seemingly in recognition of the lack of statutory authority supporting his position, defendant urges this Court to adopt the rationale set forth in several opinions of the Appellate Division of the New York Supreme Court. *See Those Certain Underwriters at Lloyds, London v. Gray*, 49 A.D.3d 1, 856 N.Y.S.2d 1 (2007); *Republic Franklin Insurance Co. v. Pistilli*, 16 A.D.3d 477, 791 N.Y.S.2d 639 (2005); *Penn–America Group, Inc. v. Zoobar, Inc.*, 305 A.D.2d 1116, 759 N.Y.S.2d 825 (2003) (mem.). The defendant contends that the courts in those cases "precluded insurance carriers from relying on otherwise applicable exclusions in insurance policies to deny coverage in cases where the insurance carrier ha[d] failed to provide written notice of [its] denial of coverage in a reasonable time or as soon as reasonably possible." The cases cited by defendant, however, are predicated squarely upon New York insurance law, both statutory and decisional, and have little bearing on the issues before us.

In light of the foregoing, we agree with the trial justice that Great American had no duty to disclaim before completing its investigation and also that the explicit assault and/or battery exclusion in the insurance policy precluded coverage for any claim "arising out of" an assault and/or battery. Therefore, we are satisfied that no genuine issue of material fact exists; and, as such, we discern no error in the Superior Court's grant of summary judgment in favor of Great American.

The defendant also argues on appeal that the assault and/or battery exclusion in the policy rendered the coverage illusory because, he claims, the exclusion would preclude coverage in any circumstance in which an employee of End Zone had physical contact with a patron, even if no injury were intended.[6] To support his

---

**6.** We recognize that Mr. Gondusky was nei- ther a beneficiary nor a third-party beneficia-

argument, defendant cites to *Picard v. Barry Pontiac–Buick, Inc.*, 654 A.2d 690, 694 (R.I.1995) and *Proffitt v. Ricci*, 463 A.2d 514, 517 (R.I.1983) to emphasize that the definition of battery in those cases does not require an intent to injure. *Picard* defines battery as:

> "an act that was intended to cause, and in fact did cause, 'an offensive contact with or unconsented touching of or trauma upon the body of another * * *. An intent to injure plaintiff, however, is unnecessary in a situation in which a defendant willfully sets in motion a force that in its ordinary course causes the injury.'" *Picard*, 654 A.2d at 694 (quoting *Proffitt*, 463 A.2d at 517).

The defendant argues that because "an intent to injure is not a necessary element of battery," the assault and/or battery exclusion "would deny coverage" in all situations where an "employee comes into physical contact with a patron and injury results," regardless of whether an intent to injure was present. Therefore, according to defendant, the exclusion rendered the policy to be illusory.

 The defendant's reasoning, however, is flawed. Although "[a]n intent to injure" is not required for a battery to have occurred where a person has the intention to "set[ ] in motion a force that in its ordinary course causes the injury," the contact or unconsented touching itself *must* have been intentional. *Picard*, 654 A.2d at 694 (quoting *Proffitt*, 463 A.2d at 517). Thus, if the contact is unintentional, regardless of whether there is a resulting injury, the assault and/or battery exclusion would not preclude coverage because the contact would not constitute a battery. We will deem an exclusion to an insurance policy illusory only when it "would preclude coverage in almost any circumstance." *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 759 (R.I.1990). The assault and/or battery exclusion at issue precludes coverage only in very specific circumstances—those where an assault and/or battery has occurred—and, therefore, it is not illusory. Moreover, for purposes of this appeal, there is no dispute between the defendant and Great American that the injuries complained of by the defendant resulted after an End Zone employee intentionally pushed him. Thus, we deem that the assault and/or battery exclusion clearly precluded coverage in this case.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

---

ry to the insurance policy at issue. Great American, however, does not argue that he lacks standing to claim that the insurance policy is illusory. *See Sousa v. Town of Coventry*, 774 A.2d 812, 815 n. 4 (R.I.2001) (finding "that there is no support for the proposition that * * * an individual who is not a party to a contract may assert the rights of one of the contracting parties in order to void a contract or have it declared unenforceable"). We shall, therefore, assume without deciding that he may contest the viability of the policy.