Nova Cas. Co. v X.D. Yang & Friends, LLC (2025 NY Slip Op 52080(U))

[*1]

Nova Cas. Co. v X.D. Yang & Friends, LLC

2025 NY Slip Op 52080(U)

Decided on December 19, 2025

Supreme Court, Nassau County

Genovesi, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 19, 2025
Supreme Court, Nassau County

Nova Casualty Company, Plaintiff,

againstX.D. Yang & Friends, LLC, SUNNY ENTERPRISES I LLC and MEI FEN LIN, Defendants.

Index No. 10540/2013

For PlaintiffKatherine Maguire Tedrick, Esq. Maguire Tedrick, PLLC3366 Park Ave, Wantagh, NY 11793For Defendant X.D. Yang & Friends, LLCAndrew Sal Hoffmann, Esq.Hoffmann & Dao LLP225 West 35th Street 5th Floor, New York, NY 10001For Defendant Mei Fen LiAparna S. Pujar, Esq.Napoli Shkolnik, PLLC360 Lexington Avenue 11th Floor, New York, NY 10017

Carolyn Mazzu Genovesi, J.

This is an action to rescind an insurance policy, for common law indemnification against the insured party, and for a declaratory judgment finding there is no insurance coverage for an underlying personal injury action. Plaintiff Nova Casualty ("Nova"), the insurer, claims that defendant X.D. Yang & Friends, LLC ("XD Yang") made material misrepresentations for the purpose of procuring its insurance policy. Specifically, Nova contends that defendant XD Yang did not disclose its plans to conduct general construction and a gut renovation of the insured premises in defendant XD Yang's application for insurance. Nova further contends that it relied [*2]upon the statements defendant XD Yang made in its insurance application and would not have issued the insurance policy if it knew the nature and risks associated with defendant XD Yang's planned renovation.
On October 3, 2011, defendant XD Yang filed its application for insurance. The application contained a question about whether construction or demolition was contemplated when it applied for insurance. On its application, defendant XD Yang stated that construction and demolition were not contemplated, and renovations were not ongoing. It is uncontroverted that shortly after the application was submitted, construction occurred. On September 11, 2012, defendant Mei Fen Lin ("Lin") claims she was injured when she tripped and fell on a staircase and subsequently fell out of a window opening in the insured premises. Lin claims that she tripped on debris, which was located on the staircase, and that the debris was caused by construction in the insured premises. On November 15, 2012, Lin commenced an action to recover from injuries against defendant XD Yang and defendant Sunny Enterprises, LLC (Index No. 22075/2012). The 2012 action is currently pending in Kings County Supreme Court.
A bench trial in this action was conducted on March 17, 20 and 24, 2025. At trial, Mei Fen Lin; Thomas Tung, a licensed engineer who drafted a "plan work application;" Sik Yuen, the owner and president of Wah Man Brokerage Services, the insurance broker for the policy in question; Aileen Chan, an insurance underwriter for Everins Insurance, which underwrote the subject policy; Warren Seifert, a Director of the Major Case Unit for the insurance adjusters who handled this case; and Dominic Casale, an expert in the planning of construction in the City of New York testified.
Finding of Facts
No testimony was taken from the defendant Mr. X.D. Yang (the individual), who was subpoenaed to testify, and he was not present at trial but was represented by counsel who provided he was unable to locate his client. Additionally, there was no testimony from Jane Yang, the General Manager of defendant XD Yang and Mr. X.D. Yang's daughter, who was also subpoenaed to testify.
Sik Yuen testified that Wah Man Brokerage Services does not provide builder's risk insurance policies. Yuen testified that his wife, Julie Yang (not related to defendant or defendant's daughter), filled out the insurance application for XD Yang, while his wife asked the questions of the defendant XD Yang in person, while he, Yuen, was also present. Additionally, Yuen testified that Mr. X.D. Yang (the individual) did not speak English, and that discussions about the insurance application were done in Mandarin. Yuen testified that Julie Yang spoke Mandarin fluently. Yuen first testified that his wife Julie Yang, who is also proficient in English, typed in all the answers to the insurance application's questions. During his testimony, Yuen changed his testimony regarding who filled out the application for XD Yang, providing that it had been more than ten years since the application was made, and it was possible his wife was not present. However, he provided that it was either himself or his wife who filled out the insurance application in English for XD Yang. At trial, it was determined that no interpreter was provided for Mr. X.D. Yang (the individual) when the application was drafted. Yuen testified that Mr. X.D. Yang (the individual) spoke Mandarin, but Yuen also testified that he himself did not understand Mandarin and that it was his wife who spoke Mandarin. Further, during questioning when Yuen was asked whether he could understand and explain certain questions on the insurance application, he attempted to provide that at the time of the drafting of the [*3]application he remembered that they translated certain words to understand them. When he was further asked if he personally understood what the question seeking information regarding "structural alterations contemplated" meant, he could not explain that language. Regarding the language that Mr. X.D. Yang (the individual) spoke, the Court takes notice that defendant XD Yang's counsel requested an interpreter for a different Chinese dialect, Fujianese, for the purpose of the trial. Furthermore, Mr. X.D. Yang (the individual) testified at a deposition with the help of a Fujianese interpreter.
Aileen Chan testified that Everins Insurance was the managing agent for plaintiff Nova. Everins Insurance obtained the submission from the broker, prequalified applicants, underwrote the policy in question, and serviced the policy. The guidelines for underwriting the policy in question were admitted into evidence. This included underwriting practices, underwriting manuals, and rules pertaining to similar risks. Chan further testified that the policy in question was a "lessor's risk policy" and that plaintiff Nova would not have insured defendant XD Yang if the application indicated the insured building was undergoing renovations. Moreover, Chan testified that "building under construction" was an excluded class, for which Everins Insurance was explicitly not permitted to underwrite a policy per the insurance guidelines. Chan also testified that the application for insurance asked whether structural alterations were contemplated, or whether demolition exposure was contemplated. Defendant XD Yang's application answered "no" to both questions. Additionally, Chan testified that the insurance application also asked whether there was ongoing renovation, construction or repair to the property. Defendant XD Yang answered "no" to that question, as well. Furthermore, Chen testified that under the insurance guidelines, Everins Insurance could not have underwritten the policy if defendant's application had answered any of these questions in the affirmative. Aileen Chan also acknowledged that defendant XD Yang's address is in Brooklyn and that defendant XD Yang did not maintain an address in Manhattan.
Thomas Tung, a professional and licensed structural engineer, testified, and a prior affidavit made by him, dated April 12, 2016, was admitted into evidence. Tung was the engineer who filed the application for the construction project on defendant's property with the Department of Buildings on behalf of Modular Design, Inc. Modular Design, Inc., was the entity that provided the construction plans for Defendant XD Yang. Tung provided that he reviewed and filed ten (10) architectural drawings in connection to the construction project, that were not prepared by him but reviewed for the filing. Tung testified that he made the submission to the Department of Buildings on October 27, 2011. Several architectural drawings and photos were generated for this project and all but one drawing is dated October 24, 2011. Looking at the submission of the architectural drawings, Page 7 of the ten pages of architectural drawings has a small, dated stamp of September 15, 2011. Tung testified at trial that he did not place the date on that drawing, and that it was placed there by Modular Design, Inc. He also concluded that the September date had to be a typographical error on the part of the architect as all the other nine drawings are dated in October and are dated at the time of the submission. No witness was called to establish how the date was placed on any of the drawings in the application's architectural drawings. Tung also established that he reviewed and was provided photographs, which were entered into evidence, for his filing of the building application. Also entered into evidence was printed information regarding those photos that was referred to as the metadata related to the pictures. No witness was called to establish when those pictures were taken, by whom and whether the information provided as metadata was accurate or reliable. None of the photos [*4]submitted for the building application had any depictions of construction.
Dominic Casale testified that he had over 40 years of experience in the construction industry within the City of New York. Casale testified that he had assisted architects in drafting drawings for five construction projects and submitting drawings to the Department of Buildings. Casale had no involvement in the architectural or construction work that is the subject of this action. Casale was qualified as an expert in the planning of construction and had experience obtaining permits in the City of New York. Casale opined that it would take four or five months of planning to create a submission for the Department of Buildings. Since the submission was made to the Department of Buildings on October 26, 2011, per Casale's opinion, defendant XD Yang must have anticipated the construction project in question before it applied for insurance on October 3, 2011.
Mei Fen Lin is a plaintiff in a personal injury action (Kings County Index 22075/2012) against XD Yang at the property related to the insurance claim in this matter. Plaintiff called her to testify to establish that there was construction on the property at the time of her accident. She provided limited testimony that there was what appeared to be sand and lumber near stairs that she slid down and that she noticed there was no window frame or glass on the windows at the time of the accident, but generally, she testified that she did not remember what the building looked like at the time of her accident. Lastly, she provided that the accident occurred in September of 2012. The defendants consented that there was construction occurring at the property in September of 2012 when she had her accident.
Senior Nova Manager Warren Seifert testified regarding the insurance policy issued to defendant XD Yang from Nova. He testified that Nova received the claim which was forwarded from the insurance broker on November 27, 2012. On December 12, 2012, there was an investigative report conducted by Nova in relation to the claim and the accident. No later than December 27, 2012, he provided that Nova had all the facts it believed to disclaim coverage based on misrepresentations. Thereafter Nova disclaimed coverage in March of 2013. However, Seifert testified that the mailing receipt dated April 9, 2013, did not contain an addressee and was unauthenticated. Moreover, the disclaimer was mailed to two addresses, 6919 14th Avenue, New York, NY 11128 and 772 44th Street, Fourth Floor, New York, NY 11220. Seifert conceded that defendant Yang's address was listed on the application and was not in Manhattan but in Brooklyn. Seifert's testimony also determined that the insurance policy was issued pursuant to Nova's program, which was established to reach the Asian American and Chinese American marketplace. He could not provide whether the program to reach this market contemplated providing translation for applicants.
Documentary evidence was entered at trial which in part included prior deposition testimony; letters; photographs; photographs with metadata; the insurance application; the notices of claims and email related to the insurance coverage; underwriting guidelines for the insurance policy issued; quotes for cost of coverage; Nova's Insurance Policy and confirmation; and the inspection report related to the accident conducted by Nova, and Notice of non-renewal of the policy.
Law and Analysis
Plaintiff Nova claims that it is entitled to recission of the insurance policy on the ground that defendant XD Yang made material misrepresentations when applying for the insurance policy. Defendant asserts that Nova's declination of coverage was untimely as it failed to timely [*5]serve a valid disclaimer of coverage and now seeks to retroactively avoid coverage through speculative allegations of fraud. Moreover, defendant XD Yang asserts that plaintiff has not met their burden of proving that defendant XD Yang made misrepresentations that the building they were insuring had planned construction prior to the application for insurance.
Insurance Law § 3420(d)(1)(C)(2) provides:
If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.
Section 3420(d)(2) imposes a two-part obligation on a liability carrier when the accident occurs in New York. First, timeliness in that the disclaimer must be issued "as soon as is reasonably possible" once the insurer has sufficient knowledge of the facts on which it will rely. Secondly, the manner in which the disclaimer must be provided which is in writing and promptly mailed to (a) the insured and (b) "the injured person or any other claimant."

The purpose of Insurance law § 3420(d) is "to protect the insured, the injured person, and any other interested party who has a real stake in the outcome, from being prejudiced by a belated denial of coverage." Excelsior Ins. Co. v. Antretter Contr. Corp., 262 AD2d 124, 127 (1999). The language requiring the insurer to give written notice of disclaimer of liability or denial of coverage as soon as is reasonably possible "leave[s] no doubt that [the Legislature] intended to expedite the disclaimer process, thus enabling a policyholder to pursue other avenues expeditiously." First Fin. Ins. Co. v. Jetco Contr. Corp., 1 NY3d 64, 68 (2003). "The 'timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer.' " Utica National Insurance of Texas v. Kassie, 202 AD3d 800, 801 (2d Dep't 2022) quoting First Fin. Ins. Co. v. Jetco Contr. Corp., 1 NY3d 64, 68—69 (2023). "An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." Utica National Insurance of Texas quoting First. Fin. Ins. Co. at 69. An insurer was found to unreasonably delay in disclaiming insurance coverage, when it delayed in disclaiming coverage for two months, between learning of an underlying action and completing its investigation and delayed for additional months before sending its disclaimer. Midvale Indemnity Company v. Arevalos Construction Corp., 755 F.Supp 3d 250, 262 (2024). Where an insurer delayed in disclaiming coverage for nearly four months, after the insurer had sufficient information to disclaim coverage, its disclaimer was found to be insufficient. George Campbell Painting v. National Union Fire Ins. Co. of Pittsburgh, PA, 92 AD3d 104, 106 (1st Dep't, 2012). "An insurance carrier may effectively cancel its policy 'by mailing a notice of cancellation to the address shown on the policy, provided that it submits sufficient proof of mailing, regardless of whether the notice is actually received by the insured.' " York v. Allstate Indem. Co., 8 AD3d 663, 664 (2d Dep't 2004) quoting Makawi v. Commercial Union Ins. Co., 244 AD2d 533 (2d Dep't 1997).
Furthermore, an insurer must send a disclaimer to an injured third party (here Mei Fen Lin, the plaintiff in Kings County Supreme Court personal injury action, Index No. 22075/2012) in addition to the insured, when the injured third party is known to the insurer. State Farm Mut. Auto. Ins. Co. v. Cooper, 303 AD2d 414 (2d Dep't 2003); Insurance Law § 3420(d). Here, Lin commenced an action on November 15, 2012 and Nova received Notice of Claim from the [*6]insurance broker on November 27, 2012. However, Lin never received the disclaimer. Even if the insured receives notice, the insurer can lose its defense against the third party if the third party was left out. General Accident Ins. Group v. Cirucci, 46 NY2d 862 (1979).
The trial record provides that the accident occurred on September 11, 2012. Thereafter, plaintiff received a Notice of Claim on November 27, 2013, and at trial plaintiff did not prove that they met the conditions in Insurance Law Section 3420(d)(2) in that they disclaimed as soon as reasonably possible by promptly mailing the disclaimer to the insured and the injured party. Nova's witness Seifer testified that Nova received the notice November 27, 2012, which was after Lin had filed her personal injury claim, and thereafter Nova for the next month was conducting an investigation which concluded around December 27, 2012. The exhibits entered at trial establish that plaintiff did not mail the disclaimer letter until approximately four months after first receiving notice, which was in March of 2013. The Court finds that upon review of the entire trial record plaintiff did not establish a reason for the three-to-four-month delay in disclaimer of coverage.
Regarding the mailing of the disclaimer to a wrong address, it is uncontroverted that plaintiff attempted to disclaim coverage over the accident by sending notices to defendant XD Yang at two addresses, 6919 14th Avenue, New York, NY 11128 and 772 44th Street, fourth floor, New York, NY 11220. Neither of those addresses was shown to be the address provided for defendant XD Yang in relation to his insurance coverage. Defendant XD Yang's address was 829 52nd Street, Brooklyn, NY. The trial record established Nova mailed the disclaimer letter to the wrong address and Nova's mailing receipt from April 9, 2013, did not provide that it reached defendant XD Yang. No mailing of disclaimer was provided to defendant's Brooklyn address. The Court finds that defendant XD Yang's default in this matter does not relieve plaintiff of its burden to comply with the mandatory statutory requirements to properly disclaim coverage. Additionally, there were no facts established by plaintiff at trial to show that the injured claimant was sent notice of their disclaimer of insurance.
Ordinarily, plaintiff Nova's failure to properly disclaim coverage would require plaintiff Nova to provide coverage for the subject accident. However, in the present case, plaintiff Nova argues that defendant XD Yang procured the insurance policy in question by making material misrepresentations. Specifically, plaintiff Nova argues defendant XD Yang represented it did not have plans for construction on the insured property when it applied for insurance, when in fact extensive construction was planned at the time defendant XD Yang applied for insurance. Plaintiff Nova further argues that the material misrepresentations in question render the insurance policy in question void ab initio, notwithstanding Insurance Law § 3420(d).
"The initial burden of demonstrating a valid cancellation of a policy is on the insurance company which disclaimed coverage." York v. Allstate Indem. Co., 8 AD3d 663, 664 (2d Dep't 2004). "A disclaimer is unnecessary when a claim falls outside the scope of a policy's coverage portion, since 'requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.' " City of New York v. St. Paul Fire and Marine Ins. Co., 21 AD3d 978, 980 (2d Dep't 2005) quoting Matter of Worcester Insurance Co. v. Bettenhauser, 95 NY2d 185, 188 (2000). "'[M]aterial misrepresentations ... if proven, would void the ... insurance policy ab initio.' " Meah v. A. Aleem Const., Inc., 105 AD3d 1017, 1019 (2d Dep't 2013) quoting Tyras v. Mount Vernon Fire Ins. Co., 36 AD3d 609, 610 (2d Dep't 2007). "A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an [*7]inducement to the making thereof." Insurance Law § 3105(a). "A misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented." Piller v. Otsego Mutual Fire Insurance Company, 164 AD3d 534, 536 (2d Dep't 2018) quoting Interboro Ins. Co. v. Fatmir, 89 AD3d 993, 994 (2d Dep't 2011). "To establish the right to rescind an insurance policy, an insurer must show that its insured made a material misrepresentation of fact when he or she secured the policy." Joseph v. Interboro Ins. Co., 144 AD3d 1105, 1106 (2d Dep't 2016) quoting Interboro Ins. Co. v. Fatmir, 89 AD3d 993, 993—994 (2d Dep't 2011). "To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show that it would not have issued the same policy if the correct information had been disclosed in the application." Thandi v. Otsego Mutual Fire Insurance Company, 199 AD3d 849, 851 (2d Dep't 2021) quoting Caldara v. Utica Mut. Ins. Co., 130 AD3d 665, 666 (2d Dep't 2015).
In the present case, plaintiff provided evidence through the witness Aileen Chan that based on its underwriting practices and guidelines for issuance, it would not have issued the insurance policy if it was aware that construction was planned. However, the focus of the Court is whether the evidence at trial provides that there were material misrepresentations of fact regarding whether construction was planned prior to the application for insurance, even if the plaintiff's underwriter would have denied coverage based on whether there was construction contemplated.
The testimony established that there was both a language barrier in the application process and the inability to correctly communicate with defendant X.D. Yang regarding its insurance application. The testimony of Sik Yuen, who owns Wu Man Brokerage Services, is not reliable or credible. His memory of the events was not clear, and he attempted during his testimony to tailor his answers to make it seem as if Mr. X.D. Yang (the individual) was fully informed because his wife Jane could translate for the defendant. Moreover, there was no testimony from Sik Yuen that his insurance company had any awareness of planned construction on the site. Therefore, it is unproven that defendant XD Yang made any material misrepresentation during the application process. As a result, plaintiff argues there were misrepresentations based on documentation related to the construction project in that it proved the architectural plans to renovate defendant's building had to be made prior to the application for insurance. Therefore, plaintiff claims there was a material misrepresentation by defendant to obtain the insurance.
In reviewing the documentation and testimony, the Court finds that the only evidence that the construction could have been planned prior to the application is a single date, September 15, 2011, placed on one page of the ten pages of architectural drawings, dated October 24, 2011, and submitted to the Department of Buildings on October 27, 2011. However, the Court finds that plaintiff failed to establish that the date on the one drawing was not a typo or mistake - as opined by Thomas Tung, the structural engineer who filed the construction application. Tung did not place the date on the drawings and no witness was called who prepared the dated portion of the documents to establish any timeline of when they started to prepare the documents. Additionally, plaintiff argues that the metadata on photographs made to be filed with the building for the permit application, dated September 15, 2011, can be relied on to establish that construction was planned prior to the application for insurance. However, the photos submitted with the application do not establish any fact related to construction. They are pictures of some [*8]portions of the inside and outside of the building that do not depict construction, but instead depict typical apartments, hallways, communal spaces and outside portions of the building. There is no metadata on the photos indicating the purpose of the photos. Additionally, plaintiff did not establish who took the photos, as they were entered into evidence on consent. Plaintiff did not establish the purpose of the photos being taken and asks the Court to speculate that they were taken for the sole purpose of the construction application, when they easily could be for another purpose. No other evidence was provided, no dated construction contracts, no dated architectural contracts, and no building filings before the date the insurance application was made.
Additionally, the Court finds that the testimony of Dominic Casale is of limited probative value and is insufficient to determine that the renovations to the insured property must have been contemplated prior to the insurance application. While Casale's expertise in construction and obtaining permits was established, it was determined that he had only submitted five applications similar to the application in question to the Department of Buildings. Furthermore, the Court finds that Casale's opinion regarding the time required to draft the plans for the Department of Building application to be speculative. Casale admittedly had no knowledge of the entities involved in drafting these plans, the staff they employed to do so, or the length of time typically required for these entities to complete submissions. Therefore, the Court finds there were no facts to establish there was a material misrepresentation of facts that would allow Nova to disclaim coverage.
Accordingly, the Court finds that plaintiff Nova did not timely disclaim coverage in their failure to demonstrate why there was a three-to-four-month delay in declination and that the notice was improperly sent to a wrong address and the injured party Mei Fen Lin was not notified on the disclaimer. Further, the Court finds that at trial, plaintiff failed to demonstrate that defendant XD Yang made material misrepresentations in applying for insurance sufficient to warrant rescission of the insurance policy in question.
This constitutes the Decision and Order of the Court.
E N T E RDated: December 19, 2025Hon. Carolyn Mazzu Genovesi, A.J.S.C.